Chief Justice Robertson
delivered the Opinion of the Court in this case
in the decision of which Judge Nicholas took no part.
To reverse a decree rendered in favor of Southard against Thoms, the latter has appealed, and the former has prosecuted a writ of error.
Thoms, who was sole owner of the steam boat Columbia, sold two thirds thereof to Courtland D Howell and Anderson Miller, in April, 1825, for seventeen thousand dollars ; for ten thousand six hundred and sixty six dollars and sixty six cents, of which, remaining unpaid, they gave their promissory note, dated June the 2nd, 1825, and payable on the 15th of July, 1825; and, at the same time, they pledged or hypothecated their interest in the boat, for securing the payment of the amount of their note.
Immediately after the sale, Miller took the command' of the boat, which had been and continued to be em *476 ployed in navigating the Ohio and Mississippi rivers, from Cincinnati (where she had been built) to New Orleans. The boat brought the .owners in debt whilst Miller had the command of her ; and, on the 15th of June, 1826, Thoms repurchased Miller’s interest in the boat, taking it cum onore, and allowing what Miller had agreed to. gi.ve him for it; and shortly afterwards, Augereau Gray was employed to command the boat, in the business of transportation from Cincinnati to New Orleans.
Tile boat libel-led at New Orleans ;' various claims, includi&g all Thoms’, brought in under the libel ; sale of the boat there,and distribution of the proceeds by orcerof court, and final decree between those claiming to be owners of tji.e boat.
*476 On the 22nd of July, 1826, Thoms filed a bill in chancery in the Jefferson circuit court, in this state, for enforcing his hypothecation, or pledge, anil asserting a lien for advances made by him and debts devolving on him; and, on the same day, the subpoena, was served on Howell in Jefferson county,.where he then lived.
On the 2.1st of J.u.jae, 1826, Howell gave his note to Southard for. upwards of eight thousand dollars; and in Jlugust, 1826, he confessed a judgment, without suit, for the amount of the note, in the Oldham circuit court; and. agreed that a fieri facias might be issued instantly, and levied on his interest in the boat, and that that interest might be sold, without advertisement, and for whatever should be bid5 for it.
Thoms then filed a supplemental bill, alleging, among other things, collusion between Howell and Southard, for the purpose of defrauding him, and praying for a restraining order to prevent the sale under Southard’s execution. The injunction was accordingly granted ; and afterwards, in. November, 1.826, after Southard fiad answered the supplemental bill, the chancellor authorized a sale of Howell’s interest, subject to the lien of Thoms,, and it was so sold, and was bought by Southard, at the price of one thousand dollars.
The boat, being still employed by Thoms, in its usual trade between Cincinnati and New Orleans, was after-, wards, in December, 1826, libelled at New Orleans, in the District Court of the United States for Louisiana, by James Purdon, for six hundred and forty dollars and fifty nine cents, claimed by him for supplies which he had furnished in the City of New Orleans, whilst the boat was under the command of Anderson Miller.
TJ ^ Q decree pleaded in this case, bn¿ disregarded; the» decree of the. conru^Tobtht0 _i4 tSespeedvelj.
Augereau Gray, the captain at the time of the seizure of the vessel by the marshal, under the libel, anil other persons, who had claims for services on that boat, and for supplies furnished for her, intervened and asserted their claims also upon the boat..
By the intervention of Thoms, also, his claim secured by his mortgage, and other claims resulting from his ad-.' vanees and from debts which the boat had incurred pri- or to the sale under execution, were asserted..
Southard and Howell, each claiming. the proprietorship of one third of the boat, answered the libel, and all the.intervening claims, and denied the jurisdiction of the court. But, by the order of the court, the boat was sold by the marshall, and Thoms became the purchaser, at the price of thirteen thousand five hundred dollars; which was distributed by the court, among'the different claimants; and afterwards the cause finally settled, as. between Thoms, Southard and Howell,., by decreeing to Southard two hundred and, forty six dollars and forty six cents, to be paid by Thoms, and seventy seven dollars, to be paid by Augereau Gray, Uinfull” of the claims of Howell and Southard to “die .proceeds” of the sale of the boat; and Southard’s attorney received the sums thus, decreed, to him.
Afterwards Thoms pleaded that decree in bar of a claim which Southard had asserted in a cross bill in this case, for one third of the boat, and of the profits accruing since ins purchase.
But the circuit court disregarded the decree of the District Court of the United States in Louisiana, and decreed, that Thoms should pay to Southard four thousand and fifty two dollars. — that sum being-one third of sixteen thousand dollars, for which Thoms had sold the boat after his purchase at the marshal’s sale, arid one third of the net profits of the boat from the date of Southard’s purchase to the sale by Thoms, after deducting one thousand eight hundred and forty five dollars and eleven cents — the sum. supposed to be due to Thoms under his hypothecation or pledge, and six per cent, interest on that sum-
^Tudg’t, on a note, is confessed iu a county where neither party resides ; deft agrees that ex’on may be issued forthwith, and belevied on the boat in controversy, and that she may be sold without advertisement : upon these, and various other facts and circumstances recounted in the text, it is held, that the note was the result of a combination to defraud another owner of the boat, and that the plaintiff in thejudg’tis not to he considered as a bona fide creditor.
Southard now complains, that the decree allowed him less than he was entitled to, and insists that Thoms' had no lien on the boat as against him, because the mortgage, as he terms it, was never recorded.
Thoms insists, that the decree of'the court in Louisiana, is conclusive as to all the same matters in controversy in this case; and that, if it be not conclusive, still he is entitled to several sums which he enumerates, and for which the circuit court refused to allow him a credit.
ill any interesting points are presented, but we shall notice such only as we deem important to the decision of this controversy, and those we shall consider but briefly, and in their natural order.
I. Whatever may be the true state of case between Southard and Howell, this court must pronounce that judgment on the-transactions between them, which the facts exhibited in the record authorize and require.— And thus considering the matter, we cannot judicially decide that Southard was a bom fide judgment creditor of Howell. The note on which the judgment, which Howell confessed, purports to have been rendered, bears date only one day prior to the service of Thoms’ subpoena on Howell. There is no witness to that note. There is no proof that it was given on the day on which it purports to have been given. The original note lias not been exhibited or proved, and the only evidence of the existence of such a note, is the judgment confessed upon it. There is no satisfactory or credible proof, that the note was given for a full, or legal, or valuable, or bona fide consideration, notwithstanding the charge in Thoms’ bill, that it was the product of a fraudulent combination between Howell and Southard, to cheat him and to defraud the creditors of the boat. Howell is the only witness who speaks of any consideration, and his testimony is entitled to but little if any effect: first, because there are circumstances indicating that there was a combination between him and Southard, and that he was decidedly biassed and probably interested in favor of Southard, as in his own case. Second, because lie is discredited by the inconsistency between his answer and his *479 deposition, in one of which he swore, that there was no usury in the alleged consideration for the note ; arid in the other he swore-, that there was usury to an amount exceeding thirteen hundred dollars. Southard did not even suggest in his answer what was the consideration for the note. Though the parties both lived in. Louis-ville. the judgment was confessed in Oldham county. Howell consented, that an execution should he issued al once and that all his interest in tiie steam boat, furniture, tackling;. $rc should He sold, without advertisement; and Southard directed the sheriff to leave the boat, after the lew, in Howell’s possession, and directed him also to leave it. in Howell’s possession, even after it should be sold; thu« shewing, either that the sale was to he merely nominal, or that it was to he chiefly, if not altogether, for the benefit of Howell: and in their answers, filed in the Louisiana court, both Howell and Southard claimed one third of the steam boat.
There is no, law requiring a pledge to be recorded. Two persons areownersof a boat— both in possession; one being indebted to the other,giveshhn share, reciting íl!at Jie has pledged and creditor con’ tinues his postrolT^onsiterl ingthetransitocbaracte™°and uses of the subject of the lien, it is held, that the transaction is a pledge, and not such a mortgage as must he recorded to give it validity.
Such circumstances do not characterize Southard as a fair, preexistent, bona fide, judgment creditor of Howell for eight thousand dollars, or for any amount; and we do not, therefore, fpel authorized to consider him as standing in the attitude of such a creditor in this case, so far as Thoms may be concerned.
But were Southard deemed a bona fide creditor of Howell, still his lien is not prior to that of Thoms.
Thoms had a prior lien in consequence of his pledge. The document introduced as evidence of that lien, recites, that Howell “pledged, hypothecated and mortgaged” his interest in the steam boat. Thoms and Howell were both in the possession of the boat at the date of the pledge, and Thoms retained his possession ever afterwards; and, though we will not say, that a technical mortgage ot a steam, boat (the mortgagee being in the possession,) need not be recorded,- but will, for the present, leave that question open ; still the registration of such a mortgage, on a thing so fugitive and almost ubiquitous, cannot, in many cases, effect the object of notice, intended by the law requiring the registration of *480 conveyances of other property to be recorded. Theáe considerations and others which might be added, combined with the phraseology of the document itself, incline us to the opinion that it was intended to be, and should be deemed to have been, a simple pledge merely. And therefore, as no law required a pledge to be recorded, registration was nbt necessary to the validity or superiority of Thoms’ lien acquired by the pledge; and, of course, Southard, even as a subsequent bona ficlb execution creditor, could not compete with Thoms. But if Thoms should be deemed a mortgagee, still, though his mortgage was not recorded, he acquired a prior and superior lión' by his lis pWdens. Were it admitted, that he was only a mortgagee, and' that, in consequence of the non-registration of his mortgage, Southard’s execution should have been • preferred at law, still, as Thoms was also a creditor, and a prior and meritorious creditor, and, as a suit on his mortgage for a foreclosure was a proceeding in rem, and, per se, attached a lien to the thing proceeded against, before Southard had any lien, he might thereby — waiving the lien given by the simple mortgage — have acquired an equitable lien which could not have been divested by the levy of Southard’s execution, pendente lite.
'a bona fide ■'in<^*a°morwa«é "to secure his not ’ recorded, hut upon whiph bo has instituted a suit, in rem, will be 'preferred to an'other creditor, 'or a purchaser, 'who acquired a lien or purchas'ed, after thfe “coinmen cement ‘Of the mortgagee’s suitfor the suit giv'es a lien independent of the mortgage. The party purchasing, "or taking a lien, while the suit is pending, takes it cum onere, 'or subject to tiro coir.p’t’s claim: p. 4S1.
One, of two ‘owners of a steam boat,flies a bill aguinstthe ‘other, to prevent him from ‘seilinghis share, to enforce a mortgage on it, and subject the boat to a reimbursement of his own advances, and the claims of other creditors:hecan maintain his suit for this object, and have a final settlement of all transactions connected with the joint ownership ; and the Us pendens gives the comP1»»'ant an equ| which he ’can-pot be divested, qnent levy or sale‘
*480 But the bill of Thoms was not for a foreclosure only; its chief object was to enjoin Howell from selling his interest in the boat, and to subject it to other claims, and to the demands of other creditors who held .liens on it, and for whose demands Thoms was liable, and apprehended that, in consequence of Howell’s insolvency, he would be solely liable. Upon this latter ground alone, he h.ad a right to sue in chancery, to coerce a settlement; of all joint accounts artel liabilities, and to attach Howell’s interest in the boat, as his only indemnity. And this alone, without any pledge or mortgage, gave to Thoms an equitable lien on Howell’s interest in the boat, which could not have been divested or affected, by a subsequent' execution, or even sale, pendente lite. Scott vs. McMillan, 1 Littell, 302, and, of course, as the court thus had jurisdiction on this latter ground, if upon no other, it would have been proper to adjudícale on *481 the whole controversy raised by the bill, even if a bill on the mortgage only had not, of itself, given an equitable lien.
-q'he courts of j1’® U- States have an exclusive mnratim© Íen(H¡ÍCtl°n’¶j as the tide ebbs 'i"fose®hofñr^ nishsuppliés^-c foreign^orts or in a state where the owners do not reside, have HenS ’on the vessels, which they may enforce in a court of maratime (jurisdiction, and the decree binds all parties interested.
Wherefore, had Southard been a bona fide creditor, and had Thoms been mortgagee, instead of pledgee, the lien acquired by the lis pendens, would have been prior, and superior in equity, to that acquired by the execution.
In this aspect of the case, had Southard been a bona fide creditor, and had the decree in Louisiana been inconclusive, it would be evident, that the circuit court erred to the prejudice of Thoms; for the established demands for which his bill was filed, and which he had a prior right to have satisfied, greatly exceeded those allowed bv the circuit. judge ; and Southard shetvld not come in until after the just demands sued for by Thoms, had been full v satisfied ; for the Us pendens placed him (Southard) precisely in the attitude of Howell, and therefore he could have been entitled only to the residive of Howell’s interest,. after the debts for which Thoms liad attached (hat interest had been discharged. In this view, Southard, even as a bona fide creditor, bought Howell’s interest cum onere, even though it be admitted, that Thoms and Howell were not partners, but were tenants in common only, and that, therefore, neither of them was liable insólido, and'neither had an inherent lien on the interest of the other, for debts incurred by the boat, or for any. balance due to either of them individually.
But, if Southard could he deemed a bona fide creditor, lie could not now be entitled to any decree against Thoms, because the decree m Louisiana is conclusive as to this controversy.
The courts of the United States have exclusive maritime jurisdiction. That jurisdiction extends as far as the ebbing and flowing of the tide. If the tide ebb and flow at New Orleans, the agreement on which the libellant’s claim was founded, was a maratime contract.— *482 Such a contract, made in a foreign port, or in a stale in which the owners of the boat did not reside, gave a lien on the- boat itself, and authorized á suit in rem. Abbott on Shipping, 109; and “ The General Smith,” 4 Wheaton, 438; Condensed Reports, 496. The decree of a court of admiralty, having jurisdiction in rem, is conclusive every where, and on all persons who have an interest in the thing. 1 Dallas, 54; Cond. Rep. 21; 9 Cranch, 126; Cond. Rep. 306.
A steam boat, having been lieral court, having maratime jurisdiction, m another state, and that court having directed a sale of the hute^tlie^ro" eeedsamongvawhTbecamepar ties, and estabwWchCth™boat was liable; and finaldecreefsetilingthe respective rights of the owners, claimants, and mortgagees, of the boat; the decree being pleaded in a suit in this state, this court presumes —-nothing appearing to the contrary — that that court had jurisdiction in rem, and of all the matters embraced by the decree; Sr holds it conclusive, finid, n.otwith standingthesuit here was previously 'commenced upon some of the same claims— post 484.
This court does not know that the tide does not ebb and flow, to some extent, at New Orleans. We are indeed disposed to believe that it does, though its flux and reflux may be scarcely perceptible. But knowing nothing to the contrary, comity requires us to presume, that the J>istrict Court of the United States for Louisiana had maratime jurisdiction m rem, and had a right to decree ^’e sa^e fhe “ Columbia” and distribute the proceeds, Having, or being presumed to have, competent power over l^e *,oat when it was .seized under the libel of Purdon, the decree'of the court must be conclusive on all die claims which were litigated in that case, and must bar Southard’s claim to any interest in the boat, or in its profits, unless the court, in its decree, as between him and Thoms, transcended its power, or unless Thoms should be estopped by his acts from relying 6n that decree.
First. This court cannot decide that the federal court transcended, in any particular, its maratime jurisdiction. The part owners of the boat were necessarily parties to the libel ofPnrdon ; and, after paying the claims of the libellant and of the other strangers who bad intervened, the court certainly had jurisdiction to distribute among the owners, what still remained of the proceeds of the sale.of their vessel. This record does not shew what the proof was in that case. Perhaps it was proved, that Thoms and Howefl were partners in the boat at the date of Southard’s purchase; or that Southard was not a bona fide creditor ; and, in either event, Thoms would have had an available lien on Howell’s third of the boat, which the admiralty court, having, jurisdiction over the boat, had a right to adjust; or, if there was no proof *483 that Thoms and Howell were partners, or that there had been collusion between Southard and Howell, still, as Thoms’ pledge gave him a lien on Howell’s interest in the boat, the court had a right to adjust that lien in the distribution of the avails of the sale of the boat. But, in any event, the court had undoubted jurisdiction to distribute the proceeds of the sale among the claimants and the owners of the boat. Whether that court had jurisdiction in rem as to the claims of all those who were made intervening parties, this court has not the means of ascertaining. The presumption, therefore, must be in favor of such jurisdiction. But that is not material, because, as the court had jurisdiction in rem, in consequence of Purdon’s libel, and as between the owners of the boat, it had full power to adjust their conflicting claims; and if, in adjusting them, it allowed other claims, over which it had no cognisgncs, such an error would not invalidate the decree, or authorize this court to revise it, or to question it incidentally. But we have no reason to presume-, that there was even such an error in-the decree of the court in Louisiana. For, even had any of the claims been such as would not have given jurisdiction in rem, the appearance and answers of Howell and Southard would have given jurisdiction in personam over every maratime contract respecting the boat.
Thaappearanca of parties will enable a court of maratime jurisdiction to pro ceed upon contracts relating to a vessel, tho’ the claims arc not such as to givejurisdictioa in rem.
Whenever a vessel or boat is libelled, all parties having claims forwhich she . is liable, may intervene, <J- have decrees for their rightful shares of the proceeds.
A part owner of about may keep it employed, if will not be accountable to the others, if it is lost or damaged in the usual trade.
But it is sufficient, that the record does not shew that the decree was in any respect; extra-judicial. Thoms, owning two thirds of the boat and having a lien on the other third, had a right to a decree for adjusting his interest and claims ; and the boat having been rightfully seized under Purdon’s libel, all other claimants, over whose claims the same court had jurisdiction, had a right to intervene and claim a distributive share of the proceeds of the sale whenever it should be made.
Second. As part owner, and especially of two thirds, Thoms had a right to continue the boat in its accustomed employment between Cincinnati and New Orleans. And therefore, neither Southard nor Howell could have made him liable for even the total loss or destruction of the boat by accident at New Orleans or elsewhere, whilst *484 it was so engaged. Abbott on Shipping, 70-1. Not only did neither Southard nor Howell attempt to enjoin Thoms from controlling the boat, but neither of them manifested any o-hjection to the use he made of the boat; on the contrary, we may presume that it was the wish as well as the interest of all concerned that the boat should be employed as it was employed by Thoms, after tiie sale under the execution.
A party who-has instituted a suit to subject avessel or boat to sale, to satisfy demands to which she is, or can he made, liable, cannot translate the litigation, by send ing her to a foreign port, and there libelling iterhitnself.iiut,, as part owner, he may send her, in her accustomed trade, to a foreignport; and if she is. therelibeliedby another party, who may legally subject her to sale, the former may intervene, and claim his share of the proceeds; and —to prevent them from being distributed entirely to others — may bring inallhis claims upon the vessel or boat, and thus, in effect, transfer the jurisdiction, rendering his first suit nugatory, and subject to dismissal.
It does not appear that Thoms had any agency in causing the boat to be libelled at New Orleans; or that he did, or omitted to do, any thing, in that respect, which should, as to himself, invalidate the decree of the court in Louisiana. Nor did the pendency of this suit affect the validity or operation of that decree. After having brought his suit in this court, and taken the boat to New Orleans, Thoms ought not to have translated the litigation of his claims to a foreign court; and therefore, should not be allowed to plead in this case, the decree of the foreign tribunal, had if been rendered upon his libel, and had no other person'first attached the boat. But, as the boat had been libelled by another person, whose rights could not have been affected by the pendency' of the suit in this state,, and as Thoms might have lost the benefit of his prior lien, and have also lost the benefit of his claims against Howell, had he been passive or neutral in the libel case, he had a right to demand a just distribution of the proceeds of the sale of the boat, should its sale be decreed on Purdon’s libel. Had he not intervened as he did, Southard or Howell might have gotten possession of the residue of the money for which the boat was sold after deducting the debts of other claimants, and thus he (Thoms) might have suffered irremediably ; because that suit might, in that event, and probably would have been productive of nothing but costs and disappointment to himself.
The lis pendens in this state did not affect the maratirne jurisdiction of the court of Louisiana, whilst the boat wtts at New Orleans; nor can it, therefore, affect the decree which was, in that case pronounced.
By that decree — whether right or wrong is now immaterial — -Southard’s whole claim to an interest in the *485 boat was adjusted and concluded, and thereby became res judicata.
It is suggested by his counsel, that, as he had bought only Howell’s interest, subject to the lien of Thoms, no greater claim than that so acquired was considered by the court m Louisiana; and that,, therefore, if the lien of Thoms was inferior to-that of Southard’s execution, Southard has, notwithstanding the conclusiveness of the Louisiana decree, a just claim on Thoms for damages, which he sustained in consequence of having been prevented by the injunction from selling Howell’s absolute interest, unincumbered by the claims, asserted in the bill of Thoms.
To this argument, a threefold answer may be given.. jFirst: this court cannot decide, from any thing now appearing, that, as between Southard and Thoms, nothing, was litigated but the interest acquired by Southard’s purchase under his execution; nor can this court say certainly, what points were involved, or what proof was introduced in that litigation.
Second. Thoms’ “lien,” resulting as well from his Us' pendens, as from his pledge, left to Southard, even as a bona fide creditor of Howell, nothing but Howell’s interest, subject to that lien; and, therefore, Southard bought as much as he had a right to subject to his execution; and the court in Louisiana, even if it adjudicated, as between him and Thoms, only on the interest thus acquired, ought to have allowed — as it did — all the just claims on Howell, and on his original interest in the boat, before any thing was allowed to Southard for his derivative interest. Third: if Southard could be deemed to have been a bona fide creditor ; if, as such, he had a lien superior to that which resulted to Thoms from his pledge, and from his suit in rem; and if the court in Louisiana, in consequence of Southard’s purchase, subject to the lien of Thoms, did not allow him as much as he would have been entitled to had he not been prevented by the injunction of Thorns from purchasing Howell’s entire interest unincumbered; and if, therefore, Southard had been subjected to loss in consequence of the injunction ; still, even then, he would not have been entitled to any *486 decree in this case ; because, as the chancellor1 did not, by his order, divest him of any possession of the boat, but only enjoined him from selling it, neither the same chancellor, nor any other, could decree damages on the injunction bond, or for any loss resulting from the retraining order. In such- a case the remedy would be altogether and exclusively legal.
But, for the other reasons also, which have been suggested, Southard does not appear to be entitled to any decree whatever.
Wherefore, it is decreed and ordered, that the decree of the circuit court be reversed, and the cause remanded, with instructions to dismiss the bills and cross bills.