## Isaac Danforth *versus* Jotham S. Pratt.

An inn-keeper without license, to whom a horse is committed to be *doctored and cured*, has a lien thereon for his reasonable charges; and until such lien be discharged, replevin by the owner is not maintainable.

A lien may be waived or lost by voluntarily parting with the possession of the goods.

It may be surrendered by agreement between the parties; but as the lien must be regarded as something of value, such agreement, in order to be obligatory, must be based on a legal consideration.

The promise, not in writing, of a third party, to pay the amount necessary to discharge the lien, is an undertaking to pay the debt of another, void by the statute of frauds, and furnishes no consideration for such an agreement.

The verbal agreement, not executed, of an inn-keeper to send home a horse which he has kept and doctored, in consideration of such promise of a third party, is not a waiver of his lien.

On Report from *Nisi Prius*, Hathaway, J., presiding.

Replevin, for a mare.

Defendant pleaded the general issue, with a brief statement of a special property in the mare for feeding, keeping, doctoring and curing her, for the space of thirty days.

The plaintiff owned the mare and kept a livery stable in Bangor. A. W. Noble, an employee of a Mr. Babb of Oldtown, hired the mare of plaintiff, and while in his charge she was badly injured, and he took her to the stable of defendant, who was an inn-keeper in Oldtown, (no evidence was offered that he was licensed to keep an inn,) and requested his ostler to take care of her. He called a farrier.

The next day, plaintiff went up and saw her; said she might get well in a month, and might not in six months; that he would have to leave her there till she got so he could turn her out to pasture, and told the ostler to take good care of her. The farrier was present, and those instructions were shortly after communicated to defendant. The ostler, under the instructions of the farrier, took care of the mare, and when she got better, plaintiff went up and ordered him to take her to the depot of the railroad. He led her out, but before he had delivered her to plaintiff, the defendant came along and asked if the bill for taking care of her had been

paid. Learning that it had not, he directed the ostler to lead her back to the stable, and she was subsequently replevied.

Hastings Strickland testified for plaintiff, that being informed by plaintiff that defendant had refused to let him have the mare, he went to see defendant on account of Mr. Babb, and told him Babb was perfectly responsible; that he was then away, and that he, (Strickland,) would be responsible to him for keeping the mare. Whereupon defendant said he would wait till Babb came down, and would send the mare down by the first team—the first opportunity he had to send her down.

Upon this evidence the cause was withdrawn from the jury and submitted to the decision of the full Court.

*A. Sanborn,* for defendant.

1. Inn-keepers have a lien upon the property of their guests for all reasonable charges. Yel. 67; Story's Bailments, 476; 2 Kent's Com. 634.

2. If defendant had no lien as inn-keeper, he had as a farrier. 2 Kent's Com. 634; Story's Agency, 455; *Lord* v. *Jones,* 24 Maine, 439.

3. This lien was not waived by the conversation with Strickland. He kept possession. Strickland had no interest in the matter; he was a stranger, and the promise to him was without consideration. *Swann* v. *Drury,* 22 Pick. 485.

It was a collateral undertaking to pay the debt of another, and not being in writing, was void.

*Knowles & Briggs,* for plaintiff.

GOODENOW, J.—This is an action of replevin. The general property in the mare replevied, it is admitted, is in the plaintiff. The defendant claims to hold possession of said mare by virtue of a lien thereon, for "feeding, keeping, doctoring and curing said mare."

We are of opinion, upon the undisputed facts in the case, that the defendant had such lien, if not as an inn-keeper, as a farrier. *Lord* v. *Jones,* 24 Maine, 439.

Has the defendant relinquished or waived his lien?

Hastings Strickland, introduced by the plaintiff, testified, "that the plaintiff told him, he had been to Oldtown, and that the defendant refused to let him have the mare. Whereupon he went to see the defendant on account of Mr. Babb; that he told the defendant that Babb was perfectly responsible; that Babb was up river on a drive, and would not be down before July, and that he, (Strickland,) would be responsible to him for keeping the mare. Whereupon the defendant said he would wait till Babb came down, and would send the mare down by the first team—the first opportunity he had to send her down." It is in evidence that A. W. Noble, in the employment of Babb, hired the mare of the plaintiff; that she was badly injured while in his possession, and that she was put up at the defendant's stable by him; and that the plaintiff the next day called and examined her, said she was badly hurt, &c., and that he should have to leave her there till she got so he could get her out to pasture, and told the ostler to take good care of her.

A lien may be waived or lost, by voluntarily parting with the possession of the goods; or by any act or agreement between the parties, by which it is surrendered or becomes inapplicable. The defendant, in this case, did not voluntarily part with the possession of the mare.

The agreement with Mr. Strickland was not such an agreement as the law contemplates.

It was not between the parties, the plaintiff and defendant. Mr. Strickland says he went to see the defendant on account of Babb.

It was a promise on the part of the defendant, without any consideration. It was not intended by either party to cancel or extinguish the original claim which the defendant had on Babb or on the plaintiff, and to substitute a new contract with Strickland, in lieu of it. The promise of Strickland to be responsible for the keeping of the mare, was only a promise to pay the debt of another, and not being in writing, was

void by the statute of frauds. It furnished no consideration for the promise of the defendant. It was *nudum pactum*.

A lien must be regarded as something of value. It may be given up without any valuable consideration. But an *agreement to give it up*, in order to be obligatory, must be based on a legal consideration.

According to the agreement of the parties, as reported by the presiding Judge, a nonsuit must be entered in this case, and judgment for defendant for costs, and also for a return of the mare replevied, unless the plaintiff shall cause the defendant's claim for which he has a lien, to be discharged forthwith.

TENNEY, C. J., and RICE and APPLETON, J. J.. concurred.