CHARLES D. CLARK, Respondent, *v.* JAMES H. COSTELLO, Appellant.

*Trover — the possession of the chattel under a pledge is a defense thereto — a delivery is necessary — what delivery is sufficient — consideration for an agreement to give up a lien on a chattel.*

At the time of the alleged conversion of a chattel the person who it was alleged had converted the same was in the possession thereof under a valid existing pledge, and the pledgor did not offer to pay any charges arising under such pledge against the same.

*Held,* that such possession constituted a defense to an action in trover.

To constitute a valid pledge there must be a delivery of the chattel to the pledgee, but what will amount to a delivery depends upon the particular circumstances of each case. It is sufficient if there were any of those acts or circumstances which, in the construction of law, are deemed sufficient to pass the possession of the property, and such possession may be according to the nature of the subject.

If the pledgee has the thing already in his possession, as by a deposit or a loan, then the very contract transfers to him, by operation of law, a virtual possession thereof as a pledge the moment the contract is entered into.

A delivery subsequent to the contract may also be effectual, and one of the two joint owners of a chattel, both being in possession, may pledge his share to the other joint owner, and the latter, by continuing in possession and control, will have a valid pledge.

An agreement to give up a lien on a chattel, in order to be obligatory, must be based on a legal consideration, and a lien created by contract is not discharged by permitting the general owner to take possession of the property if it may be done consistently with the contract, the course of business and the intention of the parties.

APPEAL by the defendant, James H. Costello, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Chemung on the 7th day of August, 1893, upon the report of a referee.

*Alexander C. Eustace* and *Joseph P. Eustace,* for the appellant.

*Reynolds, Stanchfield & Collin,* for the respondent.

MERWIN, J.:

The plaintiff in his complaint in this case alleges that he was the owner and lawfully possessed of a sewer excavating machine of the value of $2,200; that on or about November 15, 1888, at East Saginaw, Mich., the defendant wrongfully took possession of it and

caused it to be conveyed to Amsterdam, N. Y., and there unlawfully converted it to his own use; that plaintiff demanded possession, which the defendant refused. In the answer, besides a general denial, it is alleged that the firm of Costello, Neagle & Co., of which defendant was a member, were in possession of the machine under a partnership arrangement between the said firm and the plaintiff in the business of. constructing a sewer at East Saginaw; that under this arrangement the plaintiff agreed to contribute to the co-partnership business the use of the machine, pay the expense of keeping it in repair and also pay one-quarter of the loss, if any, in the business, and that the said firm should retain possession of the machine and hold it as security for the payment by plaintiff of such share of the losses and for any moneys the firm expended for repairs; that there was a loss in the business, of which plaintiff's share was about $250, and that the firm also, at the request of the plaintiff, made extensive repairs on the machine, none of which the plaintiff has paid, and that the machine is in their possession as security for the same.

The proof shows that the machine was used at East Saginaw in the business referred to, which was completed about November 1, 1888, at a loss of about $1,000, and that defendant's firm paid for repairs on the machine about the sum of $141. At the close of the work the machine was, with the consent of plaintiff, removed by the defendant's firm to Amsterdam, N. Y. While it was there and under the control of the defendant, who was there acting for his firm, the plaintiff, on the 7th of December, 1888, telegraphed to the defendant to ship the machine to him at Elmira, and the defendant replied: " Will ship machine soon as Michigan matter is settled, not before." This is relied on as a conversion by defendant.

The referee finds that there was an agreement between plaintiff and defendant's firm by which the latter should have a lien upon the machine to secure to them the payment by the plaintiff of any sums which they might be obliged to expend for repairs upon the machine and of his share of any losses which might occur from the prosecution of the East Saginaw work; that there were losses, and defendant's firm expended moneys for repairs, and that plaintiff has not paid for such repairs or his share of the losses; that by virtue of the agreement above referred to, the defendant's firm acquired an equitable lien on the machine, but that this did not give to the

defendant's firm or to the defendant the possession or the right of possession, and that at the time of the shipping of the machine to Amsterdam and at the time of the refusal of the defendant to ship it to Elmira at the request of plaintiff, the defendant or his firm had no right to the possession. The referee, therefore, ordered judgment for the plaintiff for the full value of the machine.

If, at the time of the alleged conversion, the defendant's firm, or the defendant on behalf of his firm, was in possession under a valid existing pledge, it would be a defense to the action of trover as the plaintiff did not offer to pay any charges. (*Everett* v. *Coffin*, 6 Wend. 603, 608 ; 6 Wait Act. & Def. 147.)

To constitute a valid pledge there must be a delivery of the thing pledged to the pledgee, but what will amount to a delivery depends upon the circumstances of the case. It is sufficient if there are any of those acts or circumstances which, in construction of law, are deemed sufficient to pass the possession of the property. (Story on Bailments, § 297.) The possession may be according to the nature of the subject. (*Wilson* v. *Little*, 2 N. Y. 443.) If the pledgee has the thing already in possession, as by deposit or a loan, then the very contract transfers to him, by operation of law, a virtual possession thereof as a pledge the moment the contract is completed. (Story on Bailments, § 297 ; *Brown* v. *Warren*, 43 N. H. 430.) A delivery subsequent to the contract may be effectual. (*Parshall* v. *Eggert*, 54 N. Y. 18.) One of two joint owners of a chattel, both being in possession, may pledge his share to the other joint owner, and he, by continuing in possession and control, have a valid pledge. (18 Am. & Eng. Ency. of Law, 596, citing *Thoms* v. *Southard*, 2 Dana [Ky.], 475.)

The dealings between the plaintiff and the defendant's firm in regard to the East Saginaw work were initiated by a written agreement, by one of the provisions of which the plaintiff leased to the defendant's firm the machine in question, " which machine the said firm is to use in the excavation of a certain sewer," etc. The plaintiff agreed to accept as full payment " for the use of said machine as aforesaid one-quarter of the net profits accruing to said firm of Costello, Neagle & Co. from the prosecution and completion of said sewer." If the work did not prove profitable, then plaintiff agreed to pay the firm one-quarter of the loss " sustained by said

firm " in the work. It was also agreed that the capital necessary for the prosecution of the work should be furnished three-quarters by the defendant's firm and one-quarter by the plaintiff, the amount to be mutually agreed upon thereafter. After this agreement was made a question arose between the parties as to the repairs to the machine and the security the defendant's firm would have for the payment of the plaintiff's share of the loss, and, as the referee in substance finds, the defendant's firm, by virtue of the rights reserved to them in the last clause of their contract, refused to undertake the execution of the work unless the plaintiff would secure to them the payment of his share of any loss that might accrue. Thereupon an agreement for a lien was made, as found by the referee. The machine was then taken to East Saginaw and the work undertaken. The business was evidently carried on in the name of the defendant's firm. The plaintiff was there superintending the work of the machine. The defendant's firm or their agent was also there. The referee has in effect found that the defendant's firm was never in possession under the agreement that they should have a lien. This finding is, I think, against the weight of the evidence. Assuming the existence of the agreement for a lien, as the referee finds it, it follows almost necessarily that the possession of the defendant's firm was in part under it. Under the written agreement, which was never abrogated, the defendant's firm were in form lessees. This was supplemented by the arrangement for a lien, and then both agreements were carried out together. True, the plaintiff was there, but his possession, whatever it was, was subservient to the rights of the defendant's firm. Under the evidence it should, I think, have been held that the defendant's firm had a valid pledge.

The question then arises whether they have ever released or waived it. It is not found that they have, but there are some facts that it may be claimed look in that direction. The transfer to Amsterdam did not affect it, as that was with the assent of plaintiff. The defendant told plaintiff, while the machine was at Amsterdam, that if he, plaintiff, wanted the machine to go and get it. This, however, involved the payment by the plaintiff of the freight, and plaintiff did not accept the offer. The referee finds that the defendant promised the plaintiff to ship the machine from Amsterdam to the plaintiff at Elmira. Assuming this to be sustained by the evi-

dence, it would not necessarily follow that there was a waiver of the lien. It has been held that an agreement to give up a lien, in order to be obligatory, must be based on a legal consideration. (*Danforth v. Pratt*, 42 Maine, 50 ; 1 Jones on Liens, § 999.) So it is said that a lien created by contract is not discharged by permitting the general owner to take possession of the property, if it may be done consistently with the contract, the course of business and the intention of the parties. (1 Jones on Liens, § 998.)

In *Allen v. Spencer* (1 Edm. 117) it is said that, " as between the owner and the holder of the lien possession is by no means essential, except when, by surrendering the possession, the claimant can be fairly understood to have surrendered his lien, and then the question is not whether he has yielded his possession, but has he voluntarily surrendered his lien."

In the present case the possession was not in fact surrendered, and it should not, I think, be held that the defendant or his firm have waived or released their lien, or are estopped from claiming its benefit.

The foregoing considerations lead to the conclusion that the judgment against the defendant for the value of the machine was not right and should be reversed.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment reversed and a new trial ordered, costs to abide the event.