LEON HENDERSON *vs.* WOODBURY L. BERCE.

Aroostook. Opinion, November 22, 1946.

*George B. Barnes,* for plaintiff.

*Scott Brown,* for defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MURCHIE, TOMPKINS, FELLOWS, JJ.

TOMPKINS, J.   Action on the case to recover damages for breach of implied warranty of variety in the sale by the defendant to the plaintiff of fifty barrels of certified Earlaine seed potatoes. The case is before the Court on report and agreed statement of facts, the Law Court to render such final decision as the rights of the parties may require.

The plaintiff testified that in February 1944 he bought, over the telephone, fifty barrels of certified Earlaine seed potatoes #2 from the defendant. The potatoes were delivered to Mr. Henderson, the plaintiff, in containers marked as provided under our statute relative to certified seed. The plaintiff further stated

that in his conversation with Mr. Berce, the defendant, he told him he was purchasing the potatoes to raise seed for the coming year.

The potatoes were planted during the farming season of 1944 and entered with the State Department of Agriculture for certification. Under the regulations authorized by the statute they were duly inspected by Wendell Sharp, an inspector for the Maine Department of Agriculture. Mr. Sharp testified that he made two field inspections and that so far as these two readings were concerned they were good relative to disease. Mr. Sharp had been an inspector for the Maine Department of Agriculture for twenty-one years or more, and he stated that the fact that certified seed was planted does not insure that the crop raised from that seed will certify, because of aphids carrying disease virus from diseased fields to certified fields, and that weather conditions and the condition of the land on which the potatoes are planted have nothing to do with failure to certify. The question of infection, he stated, was entirely due to bugs and that this infection of the potato would not show until the next year. He further stated that when the potatoes raised from the seed in question were harvested they were of a mixed variety.

Mr. Henderson stated that from a visual inspection of the potatoes when delivered, he himself could not tell the difference in the variety of the potatoes, but after the potatoes were growing and at the time of the second inspection he could tell the difference in variety. The inspector after the potatoes were dug decided that there was a mixture of varieties in the potatoes.

At the close of the testimony of the plaintiff and inspector Sharp the following stipulation was made: *"It is stipulated and agreed that the potatoes sold by the defendant to the plaintiff were grown and prepared for sale by the defendant in accordance with the regulations laid down by the commissioner of agriculture for the growing and certification of certified seed potatoes, as set forth under Sec. 124 of Chap. 27 R. S. 1944,*

and that to each bag of potatoes was attached a tag of certification as provided for under Sec. 127 of said Chap. 27; that the bags actually contained a varietal mixture of 70 per cent Houma and 30 per cent Earlaine potatoes; that the permitted tolerance of varietal mixture under the regulations of the commissioner of agriculture is .0025 per cent; that the defendant acted in good faith, without fraud or deceit, there being no knowledge on his part that the potatoes sold to the plaintiff contained a varietal mixture.

It is further stipulated and agreed that if the defendant is liable for damages, they should be assessed under one of the following methods:

a. The difference between the market value of table stock and certified seed at the time of sale—$150.00.

b. The difference between the table stock market price of the crop grown by the plaintiff from the seed purchased from the defendant and the value of the crop as certified seed at the time of harvest—$516.04.

c. The difference between the table stock market value of the crop grown from the seed purchased by the plaintiff from the defendant and the amount the plaintiff had to pay to procure certified seed of the same quantity in the spring of 1945 for the purpose of planting his 1945 crop—$973.20.

It is further stipulated and agreed that there are only two issues in this case:

First: Is the defendant protected against liability if in good faith he grew and prepared for sale the potatoes in accordance with the rules and regulations laid down by the commissioner of agriculture for the growing and selling of certified seed potatoes, and the commissioner through his inspector did in fact inspect and certify as certified Earlaine seed potatoes the potatoes sold by the defendant to the plaintiff.

Second: If the defendant is liable, which of the above rules of damage should apply."

It may be noted in the stipulation that Secs. 124 and

127 of Chap. 27, R. S. 1944, are to all intents and purposes the same as Secs. 4 and 7 in Chap. 41, R. S. 1930, which were in effect when the sale was made and this right of action accrued. To decide the first issue submitted to this Court it is important to consider the provisions of Secs. 4, 5, 6 and 7 of Chap. 41 of R. S. of Maine for 1930, and determine the bearing they have upon this issue. These provisions are set out as follows:

"Sec. 4. The term certified seed as used in this chapter shall be deemed to mean potatoes or such vegetable seeds as shall have been grown and prepared for sale in accordance with the regulations laid down by the commissioner of agriculture and for which a certificate or tag has been issued as provided in section seven. Authority to make all reasonable rules and regulations hereunder is hereby given to the commissioner of agriculture.

Sec. 5. Any grower of potatoes or vegetable seeds may make application to the commissioner of agriculture for inspection and certification of his crop growing or to be grown in this state, giving description of his land and such information as the said commissioner may require. He shall also enter into an agreement to pay such fee into the treasury of the state for said inspection and certification as the said commissioner shall deem necessary to cover the cost of inspection and certification. Thereupon his crops shall be listed for inspection and inspected and certified by the said commissioner or his agents under such rules and regulations as the said commissioner may provide. Authority to make all reasonable rules and regulations hereunder is hereby given to the commissioner of agriculture.

Sec. 6. In determining the amount of the fee to be paid by the growers of potatoes or other vegetable seeds for inspection and certification under this chapter, the com-

missioner of agriculture may establish an entry charge not to exceed fifty cents on each acre of potatoes or other vegetables for which inspection and certification is requested, but in the case of potatoes which shall be found to be unfit for certification, the amount of such entry fee shall not exceed the actual cost of labor performed by said commissioner or his agents upon such potatoes, nor shall the charge for labor so performed upon such potatoes as shall be found unfit for certification exceed the above-named amount of fifty cents per acre, and in the case of potatoes which shall be accepted and certified the said commissioner shall establish a fee for field inspection not to exceed two dollars and fifty cents per acre inclusive of entry charge and also a supplementary charge of five cents for each barrel of potatoes which shall be finally accepted, certified, and sold as certified seed as defined in this chapter.

Sec. 7. The commissioner of agriculture may issue a certificate or tag which shall be attached to each container or package in which certified seed shall be offered or exposed for sale. Such tag or certificate shall indicate the name of the grower, the shipping station or depot, the name of the inspector making the final inspection, the variety of the seed, and shall bear the imprint of the seal of the state. Any tag, having the words "inspected," or "certified seed" thereon, attached to the container or package in which certified seed shall be offered or exposed for sale, shall be so attached thereto that the whole of said certificate or tag shall be in full view. Any person who shall knowingly or wilfully misuse any such tag or certificate or who shall attach to any container or package of seed which has not been duly inspected and certified, any such tag or certificate which shall have printed thereon the words "certified seed" or which by reason of color, size, shape, or otherwise may convey the impression that such seed has been certified by the said commissioner or his agents, shall be punished

by a fine of fifty dollars for each offense and shall be thenceforth denied the privileges of sections four to eight inclusive."

The language of the act clearly shows that it was intended to be regulatory, and penal only if the act was knowingly or wilfully violated. It does not purport to establish any new rule of civil liability for the breach of an express or implied warranty in the sale of certified seed potatoes. Section four defines the term certified seed and names the agricultural seeds which are to be included within its provisions. When the grower has complied with sections five, six and seven the seeds then appear in commerce as certified seed potatoes. Without performing the conditions set forth in sections five, six and seven the seeds do not qualify for certification. Knowingly and wilfully disregarding these sections subjects the seller to a fine and denial of the privileges of this statute.

All these conditions, by the agreed statement, have been complied with by the defendant and admittedly in good faith, without fraud or deceit. The statute does not provide any remedy for the buyer if the seeds are not as represented by the certificate or tag. The defense argues that, having complied in good faith with all the conditions imposed by the statute, the certificate is a protection to him in this action because the state has undertaken by the services which it renders to determine whether or not the potato is a certified seed potato both as to quality and variety. If the department says the potato is a certified seed it is a certified seed.

The defendant was the grower and made the selection. The inspection was made by an officer of the Department of Agriculture, as provided by the statute. The plaintiff could not tell, as he said, from an inspection, that there was a varietal mixture in the seed that he received from this defendant. Under the defendant's theory of the case the statute supersedes the common law liability of the defendant. The statute had as one

of its objectives the protection of the purchaser of certified seed. The statute will not deprive the plaintiff of his long-established common law right of action to recover damages if the potatoes were not as certified, and a warranty, express or implied, exists. A new statute will not be considered as intending a reversal of the long-established principles of law and equity unless such intention unmistakably appears. *Carle* v. *Bangor & Piscataquis Canal Co.,* 43 Me., 269; *Hare* v. *McIntire,* 82 Me., 240, 19 A., 453, 8 L. R. A., 450, 17 Am. St. Rep., 476; *Haggett* v. *Hurley,* 91 Me., 542, 40 A., 561, 41 L. R. A., 362; *Thomas* v. *Thomas,* 96 Me., 223, 52 A., 642, 90 Am. St. Rep., 342; *Howard* v. *Howard,* 120 Me., 479, 115 A., 259.

We do not believe that the legislature by this act intended to deprive the plaintiff of his common law rights. Rather, the consideration of the various sections of the statute in their relation to each other leads to the conclusion that it was the intent to establish protection for the purchaser of certified seed potatoes, and for the seller, the certificate provides prima facie evidence that the goods sold were certified seed potatoes of the variety described on the tag or certificate within the varietal tolerance allowed, and grown according to the regulations of the commissioner of agriculture. The inspection, issuance and affixing of the certificate to the container are official acts. The law raises the presumption that the public officers have acted with fidelity and properly discharged their duties, but this presumption, like the presumption of innocence, is undoubtedly a legal presumption, and it does not supply proof of independent and substantive facts, and when met by competent evidence it is destroyed. *United States* v. *Ross,* 92 U. S., 281, 23 L. Ed., 707; *Blaco et al* v. *State et al,* 58 Neb., 557, 78 N. W., 1056; *Crawford* v. *Zieman et al,* 192 Ia., 559, 185 N. W., 61. Such presumption in the present case is rebutted by the admitted substantive facts which destroy the probative value of the certificate. The potatoes delivered to the plaintiff were not Earlaine potatoes within the varietal variation, but seventy

per cent Houmas and thirty per cent Earlaines. The defendant is not protected against liability for breach of warranty of variety although in good faith he grew and prepared for sale potatoes in accordance with the rules and regulations of the commissioner of agriculture for the growing and selling of certified seed potatoes, if there was a warranty either express or implied.

In order for the plaintiff to recover damages he must prove, first, that the certified seed had a varietal mixture beyond that allowed by the rules and regulations of the commissioner of agriculture under the authority of the statute, and that the goods did not "correspond with the description." Second, that there was a warranty, express or implied, of the variety, and that the defendant had been guilty of a breach to the plaintiff's damage. The first proposition was admitted in the agreed statement. Defendant denies the second proposition.

There was opportunity for inspection by the buyer when the goods were delivered. Inspection, however, would not have revealed the defect, as the buyer stated he could not tell the variety until after the seeds were planted and were growing, and inspector Sharp did not know the variety of potatoes produced from the seed, except that the crop was not of the Earlaine variety. "Seeds of different kinds cannot always be distinguished by inspection, and it seems to be generally recognized in such cases that the express or implied affirmation of the seller where seeds of a particular kind are asked for and sold as such, that it is of such kind, constitutes a warranty as to kind." 24 R. C. L., 175. The Uniform Sales Act, Sec. 14 of Chap. 165, R. S. 1930, of the state, provides that where there is a contract to sell or a "sale of goods by description there is an implied warranty that the goods will correspond with the description." Prof. Williston in his 2d Edition of Sales, paragraph 223, in discussing the provisions of this section says:

"It is customary to call a warranty in a sale by description an implied warranty, and for that reason this nomen-

clature has been preserved in this section of the Sales Act. The warranty might more properly, however, be called express, since it is based on the language of the parties."

The defendant was the grower and producer of the seed and was informed by the plaintiff both of the particular kind of seed desired and the particular purpose for which the seed was required. Defendant made the selection and plaintiff did not see the seeds until they were delivered to him. The variety was a substantial part of the bargain.

"Where specified goods are sold in compliance with an order describing the goods, and the seller furnishes them he is held to warrant that the goods are of the kind asked for. In such case it is a substantive part of the contract that the goods shipped are of the kind ordered. That is one of the terms of the contract, without the fulfillment of which the contract cannot be performed. In accepting the goods tendered as fulfillment of the contract the plaintiff, not being able to determine from an inspection that the seed was not of the kind ordered, relied and had a right to rely upon the description of the goods ordered."

*Kefauver* v. *Price et al,* 136 Ark., 342, 206 S. W., 664; *Parrish* v. *Kotthoff,* 128 Or., 529, 274 P., 1108 and cases therein cited; *Rocky Mountain Seed Co.* v. *Knorr,* 92 Colo., 320, 20 P. (2nd), 304; *Morse et al* v. *Moore,* 83 Me., 473, 22 A., 362, 13 L. R. A., 224, 23 Am. St. Rep., 783. In the latter case, at page 479, the Court says:

"It is now well settled by the authorities generally, our own cases included, that a sale of goods by a particular description of quality imports a warranty that the goods are or shall be of that description; a warranty which becomes a part of the contract, if relied upon at the time of purchase."

The seller is responsible for a breach of warranty when he

sells a thing as being of a particular kind, if it does not answer the description, the vendee not knowing whether the vendor's representations are true or false but relying upon them as true, whether the vendor acted wilfully or innocently. *Hoffman* v. *Dickson*, 105 Wis., 315, 81 N. W., 491, 76 Am. St. Rep., 916; *Parrish* v. *Kotthoff*, supra; *Firth et al* v. *Richter*, 49 Cal., Appeals, 545, 196 P., 277; *Hise* v. *Romeo Stores Co.*, 70 Colo., 249, 199 P., 483; *Stevenson* v. *B. B. Kirkland Seed Co.*, 176 S. C., 345, 180 S. E., 197; *Johnson* v. *Foley Milling & Elevator Co.*, 147 Minn., 34, 179 N. W., 488, 16 A. L. R., 856; *West Coast Lumber Co.* v. *Wernicke et al*, 137 Ala., 363, 188 S., 357.

We are of the opinion that the defendant in this case was guilty of a breach of warranty of the variety of the goods delivered, whether the warranty be called express or implied. There is no difference in the measure of damages. The plaintiff made known to the defendant the variety of seed potatoes that he desired to purchase. He made known the particular purpose for which they were to be used. Plaintiff did not see them until after delivery. The selection was made by the defendant. Inspection by the plaintiff when the merchandise was delivered would not disclose, on reasonable investigation, the varietal mixture. He relied and had a right to rely upon the defendant making the selection. The variety was a substantive part of the contract. The fact that the goods did not correspond to the variety ordered, though there was no fraud or deception on the part of the defendant, results in substantial damage to the plaintiff. By the stipulation of the parties they have agreed that if the defendant is liable for damages the damages should be assessed under one of the three methods set out in the agreed statement.

The ordinary rule of damages applying to a warranty of personal property is the difference between the actual value of the articles sold and their value if they had been such as warranted. Additional damages, however, are sometimes recoverable if specially declared for and such may reasonably be

supposed to have been contemplated by both parties when the contract was made, as a probable result of a breach of it. *Thomas et al v. Dingley et al,* 70 Me., 100, 35 Am. Rep., 310.

"Special damages resulting from the breach of a warranty as to quality or kind of seeds sold naturally resulting from the breach are recoverable."

24 Ruling Case Law, par. 542.

"Where a breach of warranty is in respect to the kind of seeds sold for raising a crop and the crop raised is for such reason inferior to the crop which would have been raised if the seeds had been as warranted, the buyer is held entitled to recover, according to what seems to be the better view, the difference between the value of the crop raised and the value of the crop which ordinarily would have been raised if the seeds had been as warranted."

24 R. C. L. page 263, par. 542; *Johnson v. Foley Milling and Elevator Co.,* 147 Minn., 34, 179 N. W., 488, 16 A. L. R., 856; *West Coast Lumber Co. v. Wernicke,* supra; *Wolcott Johnson & Co. v. Mount,* 36 New Jersey Law 262, 13 Am. Rep., 438; *White et al v. Miller,* 71 N. Y., 118, 27 Am. Rep., 13. Method "a" of computing the damages in the present case is not applicable under this rule. Method "b" comes within this rule.

The plaintiff contends that rule "c" should be the measure of damages because the seed was purchased for a special purpose known to the defendant, the purpose being to produce a crop of certified seed potatoes with which to plant another crop for the coming year. Defendant did not warrant that the potatoes would produce certified seed. From an inspection of defendant's Exhibit 1, the tag or certificate attached to the container, and from the rules promulgated by the commissioner of agriculture as authorized by the statute, it appears that in addition to the two field inspections, a third inspection is provided. The third inspection is at the time of the shipment or sale. If the third

and last inspection discloses defects prohibited by the statute and the commissioner's regulations, the potatoes do not qualify as certified seed. If these potatoes had been of the variety described by the plaintiff it is not certain that the seed would have passed the third inspection. The defendant's warranty was, that the seed sold would produce a crop of the variety known as Earlaine potatoes. He did not warrant that the potatoes would pass inspection and certification. This situation brings the question of damages under rule "c" into the realm of uncertainty and speculation. In this state any rule giving uncertain or speculative damages has been uniformly rejected. This seems too well established to require the citation of cases.

We therefor adopt rule "b" as the measure of damages in the present case. Because of the stipulation of the parties as to the measure of damages the entry must be:

*Judgment for the plaintiff in the sum of $516.04 and costs.*