SIMON, Justice.
Brown & Cassidy Warehouse, Inc., instituted this action in quanti minoris against Herbert J. Sills, Sr., a rice farmer, for the sum of $6,391.51, as the result of the purchase of 900.03 barrels of certified Zenith seed rice at $13 per barrel, or a total price of $11,700, made on or about February 25, 1954. At the time of the sale, the rice in question was stored in Watson’s Warehouse, at Iowa, Louisiana, and plaintiff did not order it delivered to its establishment in Crowley until the early part of April, 1954, some one and a half months after the sale was made. Plaintiff having disposed of a portion of said rice as certified seed rice, the $6,391.51 which it seeks to recover represents the difference between what it paid defendant for the remaining 833.31 barrels and the value of the same quantity of consumer rice, plus certain charges for storage and drayage.
Plaintiff alleges that it purchased the rice upon defendant’s representation that it was certified Zenith seed rice as evidenced by an official state seed certification tag; that relying on this representation, and prior to delivery, it paid defendant the market price of $13 per barrel for certified Zenith seed rice, and that this transaction was in accordance with the customs of the locality and usual business practice of buying rice on certification and not on sample. Plaintiff further alleges that although it was furnished with tags purporting to be official Louisiana seed certification tags, said rice was not of a certified quality; that upon sampling the rice after delivery, it was discovered that the rice contained too' much red rice to meet the requirements of certified seed rice, and the State Department of Agriculture on June 11, 1954, issued a “stop sale” order under Act 372 of 1946 as amended (LSA-R.S. 3:1431 et seq.), advising defendant that the rice was not certified and should not be sold as such. Plaintiff further alleges that its demand that defendant remove the rice and return the *69 purchase price was refused, thus forcing the plaintiff, in order to minimize damages and prevent spoilage, to sell the 833.31 barrels of rice on the open market on June 18, 1954, at a price of $5.88 per barrel.
In his answer filed after the trial court referred his exception of no cause or right of action to the merits, defendant admits that he sold the rice in question to plaintiff for $13 per barrel; that he assured plaintiff that the rice would be tagged by official state certification tags as certified Zenith seed rice, and that the rice was bought on certification and not on sample in accordance with custom and usual business practices. However, defendant contends that the rice had been certified by the state department of agriculture in accordance with law prior to its sale to plaintiff and that when he'sold the rice to plaintiff, it was in fact certified Zenith seed rice.
• After hearing the case on the merits, the trial court overruled the exception of no cause or right of action but rejected plaintiff’s demands at its costs, holding in its written opinion that since the evidence showed that it was a simple procedure to determine the presence of red rice, that the defect complained of was an apparent one and thus not subject to an action in quanti minoris; and holding further, that even if the defect were not apparent, the plaintiff has failed to carry its burden of proving that the rice which it purchased was not certified Zenith seed rice. Plaintiff appealed.
In support of his argument that the judgment rejecting plaintiff’s demands should be sustained, defendant in his brief re-urges his exception of no cause or right of action, contending that because the rice was purchased on certification and not on sample and defendant furnished official seed certification tags with the rice, plaintiff was precluded from disputing such certification and proving that the rice was not of a certified quality.
The trial judge was correct in overruling the exception of no cause or right of action, and we approvingly quote from his opinion in that respect:
“The first question to be decided, then, is whether or not the Louisiana Certified Seed Law ([LSA] R.S. 3:-1431 et seq.) has the effect contended for by defendant, that the purchaser of seed which has been certified by the Department is precluded from further testing same and disputing the certification.
“The Act in question has for its primary purpose the protection of the people of this state who purchase agricultural and other seeds, seeking to insure that such articles will be of proper germination and uncontaminated by noxious weeds and other objectionable qualities. It is a regulatory measure, applying to those who produce and sell seeds. * * * ¡
“The court has concluded * * * that the certification of the Sills rice did not, of itself, operate as a conclusive presumption in his favor that same was as certified * * (Emphasis ours.)
In support of his reasons the trial judge cited the case of Henderson v. Berce, 142 Me. 242, 50 A.2d 45, 48, 168 A.L.R. 572. From a reading of this case it appears that the buyer of seed potatoes sought damages resulting from his purchase from the defendant on the implied warranty that they were of a certified named variety. The seed was selected and shipped by the seller, and had been inspected and finally certified by the inspector of a department of agriculture in that State. At the trial it was stipulated that the seller was in absolute good faith and the defect was of such a nature that it could not be visibly determined on inspection. Defendant argued, as is here contended, that the fact of certification protected the seller. In disposing of this contention, the court said:
*70 “The defendant was the grower and made the selection. The inspection was made by an officer of the Department of Agriculture, as provided by the statute. The plaintiff could not tell, as he said, from an inspection, that there was a varietal mixture in the seed that he received from this defendant. Under the defendant’s theory of the case the statute super-cedes the common law liability of the defendant. The statute had as one of its objectives the protection of the purchaser of certified seed. The statute will not deprive the plaintiff of his long-established common law right of action to recover damages if the potatoes were not as certified, and a warranty, express or implied exists.”
However, we are unable to agree that the presence of an excessive quantity of red rice in rice sold- on certification in accordance with the established trade custom is an apparent defect. The record contains a stipulation between counsel for both parties that the prevailing custom and usual business practice in the locality is to buy rice on certification and not on sample, and that one of the purposes of seed rice certification is to eliminate the necessity of investigating and sampling rice upon its purchase. Furthermore, the evidence establishes, and the trial court found as a fact, that at the time of the sale, the rice was located some miles distant from the place in which the sale was consummated, and that the defendant presented the plaintiff with an official state seed certification tag showing that the rice was certified and stating that the seed sold thereunder had met all the requirements of the regulation pertaining to certification of such seed, and that the sale was made strictly on the basis of this certification. This is fully borne out in the testimony [1] of plaintiff’s manager, who effected the purchase of the rice, and fully corroborated by the testimony[2] of the defendant.
Undisputed testimony of representatives of the state commissioner of agriculture, the officer charged under LSA-R.S. 3:-1434 with the administration of the state seed law, established that at the time of the sale, one grain of red rice per pound was the maximum tolerance for certification of seed rice. Therefore at the time of the sale, the presentation of a certification tag was in effect a representation that the rice contained no more than the allowable amount of one red grain per pound.
*71 Accordingly, when seed rice is purchased on certification, in reliance on an official state seed certification tag, in accordance with local custom, the purpose of which is to eliminate investigating and sampling, the subsequent discovery of red rice in a quantity greater than that allowed for certified rice does not constitute an apparent defect defeating the purchaser’s right to demand a reduction in price.[3] The presence of red rice exceeding the maximum limit fixed in the regulations of the State Department of Agriculture is not an apparent defect which the purchaser might have discovered by simple inspection[4] for the manifest reason that the purchaser on certification is relieved of the duty of inspection and sampling. Once the produce is certified, he has the unquestioned right to rely on and accept its authenticity at the time of the pttrchase. It is true that, in discussing the exception of no cause of action above, we said that a purchaser of rice on certification has the right of inspection and to prove that it is not as certified. This is not to say, however, that the purchaser of rice on certification has the obligation of inspecting such rice and cannot rely on the certification in his dealings with the seller. To hold this would defeat two of the statutory objectives of certification: the protection of the buyer of certified seed and the elimination of sampling and testing.
We must therefore determine whether the plaintiff has failed to prove that the rice which it purchased from defendant was not in fact of certified quality.
The facts as found by the trial judge show that the defendant had complied with the requirements of the department of agriculture in the production of his 1953 rice crop; that in November, 1953, it had been inspected, sampled, approved and some 1500 barrels had been actually certified as Zenith seed rice by the commissioner’s agents in accordance with the statute, supra; that at the time of the sale, February 25, 1954, defendant had certified Zenith seed rice as defined by the state seed law, which was then stored in Watson’s Warehouse in Iowa, Louisiana; that the rice which plaintiff purchased was stored at Watson’s Warehouse until the early part of April, 1954, when it was delivered in sacks to plaintiff’s warehouse in Crowley; that official state certification tags were furnished with the rice although not attached to the sacks as required by the statute; that after delivery plaintiff’s manager drew samples, found some red rice and thereupon requested that the rice be tested by the state department of agriculture; that after sampling the rice at plaintiff’s warehouse and testing it in its laboratory, the department found it uncertifiable and issued an order prohibiting its sale as certified rice.
However, the trial court rejected the Department of Agriculture’s report that the rice was not subject to' certification and the stop sale order based thereon, concluding that the samples taken for the test which resulted in the unfavorable report were not sufficiently representative of the rice.
The record shows that the representative of the commissioner of agriculture who took the samples for the test which resulted in the unfavorable report and stop sale order testified that the samples were drawn in accordance with the regular methods required by the State Department *72 of Agriculture. Moreover, the uncontra-dicted testimony of plaintiff’s manager, which is corroborated by the representative of the department who drew the samples, establishes that it was the same lot of rice purchased on certification from defendant from which these samples were drawn. The record is barren of proof on which we may indulge in the assumption that the samples which resulted in the unfavorable report were not sufficiently representative of the rice in question.
Irrespective of the conflicting claims of the parties, the fact remains that by final official action of the State Department of Agriculture the rice sold to plaintiff was found not to be of certified quality as represented, with the accompanying order prohibiting its sale as such. Even if there had been an earlier certification of the rice in question which was in effect at the time of the sale to plaintiff, the stop sale order would in effect have revoked it. Since the rice was sold on certification, the defendant warranted not only that it was certified at the time that the sale was consummated but also tacitly represented and warranted that there was no defect existing which would cause a revocation of the certification. Defendant having sold rice warranted as certified quality, and plaintiff having relied on these representations, when in truth and in fact such representations were false, the loss must be borne by the seller.
Accordingly, the defendant is liable to the plaintiff for the difference in value between certified seed rice and the actual value of the rice at the time of the transaction.
Plaintiff has established that it actually sold 832.19 barrels of the rice for domestic consumption at $5.88 per barrel, which was then the prevailing market value. It is therefore entitled to recover for each of the 832.19 barrels the difference between $13 per barrel (the price it paid for certified seed rice) and $5.88 per barrel, or a total of $5,925.19.
Plaintiff has not produced sufficient evidence to prove with the required degree of certainty the amounts which it claims for drayage and storage, thus defeating any right of recovery thereof.
For the reasons assigned, the judgment of the district court is reversed, annulled and set aside, and it is now ordered, adjudged, and decreed that there be judgment in favor of plaintiff and against defendant in the sum of $5,925.19 with legal interest from the date of judicial demand until paid, and for all costs.
FOURNET, C. J., absent.

. “Q. How was the final sale made? A. The final sale was made by my agreeing to purchase the said amount of rice from Herbert J. Sillls by the qualifications given on the certified tag. The certified tag indicated that there was no red rice found in the sample, the tags indicated no noxious rice, red rice is considered a noxious weed.
“Q. From whom did you procure this tag basing your purchase on? A. Personally from Mr. Sills.
“Q. Did he represent to you what the quality of the rice would be? A. He represented the quality of his rice by presentation of an official tag from the official certifying agency, now the State Department of Agriculture.”

. “Q. Mr. Sills, * * * it was your understanding that you were to sell certified Zenith seed rice, is that correct? A. Yes sir.
“Q. You also told Mr. de la Houssaye that was what he was buying? A. Yes sir.
“Q. Now when you were paid for this rice, it had not been placed in his possession yet, is that right? A. No, it had not been placed, it was still in the warehouse. That was the agreement.
“Q. It was subsequently carried from Watson’s Warehouse in Calcasieu Parish to Crowley? A. Yes sir.

“Q. Prior to selling the rice to Mr. de la Houssaye, did you show him such a tag? (referring to duplicate of an official seed certification tag introduced in evidence by both parties). A. Yes.
“Q. Did you tell him the rice which he was to purchase would meet the official seed analysis as shown on that tag? A. I told him I had certified Zenith seed rice.
“Q. And you showed him the tag, is that correct? A. Yes sir.”

. Article 2541 LSA-C.C.: “Whether the defect in the thing sold be such as to render it useless and altogether unsuited to its purpose, or whether it be such as merely to diminish the value, the buyer may limit his demand to the reduction of the price.”

. Article 2521 LSA-C.C.: “Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices.”