**GENERAL MOTORS ACCEPTANCE CORPORATION**

v.

**COLWELL DIESEL SERVICE & GARAGE, INC.**

Supreme Judicial Court of Maine.

March 27, 1973.

Jensen, Baird, Chapman & Gardner, by Merton G. Henry, W. Scott Carlisle, III, Portland, for plaintiff.

Silsby & Silsby, by James A. Silsby, Ellsworth, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

DUFRESNE, Chief Justice.

The instant appeal questions the propriety of the ruling below that Colwell Diesel Service & Garage, Inc., the appellee, hereinafter referred to as Colwell, had a valid mechanics' lien entitled to priority over the lien of General Motors Acceptance Corporation, the appellant, whose lien arose by virtue of a perfected purchase-money security interest.

By agreed statement of facts submitted to the Justice below, it appears that one James F. Rafferty purchased a 1962 International tractor truck from Bean & Conquest, Inc. under a retail instalment contract. This agreement was executed on October 16, 1968 and, on the same date, was negotiated and assigned to the appellant. It is conceded that the appellant complied with all filing requirements under the law and held a perfected security interest in the chattel paper and in the 1962 International tractor truck. In 1969 Rafferty contracted with Colwell for re-pairs to the truck and, pursuant to said contract, Colwell did provide labor and materials in making the repairs which were completed on April 23, 1969 and amounted, in terms of reasonable value, to the sum of four hundred and fifty-one dollars and four cents ($451.04). Although authorized to make repairs under the terms of the retail instalment contract, Rafferty did not secure the consent of the appellant prior to contracting for such repairs with Colwell.

Upon Rafferty's failure to pay the re-pair bill, Colwell retained possession of the truck claiming a mechanics' lien thereon. A notice of lien-claim pursuant to 10 M.R.S.A., § 3802 was filed on May 22, 1969. Colwell brought its complaint against Rafferty to enforce its mechanics' lien on June 28, 1969. Rafferty defaulted and this gave rise to a judgment in favor of Colwell against Rafferty on September 30, 1969 with execution, as stated in the agreed statement of facts, "issued to Defendant [Colwell] against James Rafferty for the sum of $451.04 plus costs of $14.61" on October 30, 1969. The record does not disclose that such judgment was anything more than a personal judgment. As a matter of fact, the appellant in July 1969 had recovered possession of the truck from Colwell by prosecuting its complaint in replevin, wherein the appellee denied appellant's right to possession and, by way of counterclaim, sought damages for conversion. General Motors Acceptance Corporation appeals from the trial Court's judgment in favor of Colwell on its counterclaim in the amount of $451.04 plus costs. The appeal must be denied.

 It is a well-settled principle of the common law that he who by labor, skill or materials adds value to the chattel of another whether under an express or an implied agreement has a possessory lien thereon for the value of his services and materials, and may retain the chattel in his possession until the same be paid. See, Taggard v. Buckmore, 1856, 42 Me. 77. This right rests upon principles of natural

justice and commercial necessity. It is clear equity that a party, who has enhanced the value of the property, by incorporating therein his labor or materials, shall have security on the improved property. See, 8 Am.Jur.2d, Bailments, § 229, p. 1121; 38 Am.Jur.2d, Garages, etc. § 138, p. 435. Such a lien may be waived or lost, by voluntarily parting with the possession of the goods. Danforth v. Pratt, 1856, 42 Me. 50. In this case Colwell established the possessory requirement of the common-law lien; it retained possession of the truck until the appellant recovered it as a result of the prosecution of the replevin action. Where retention of possession is, by the common law or by statute, an underlying prerequisite to a valid mechanics' lien, this requirement is fulfilled where the loss of possession is due to removal of the goods by means of a replevin action.

■ The common law repairman's lien, also known as an artisan's lien, has been held to survive the enactment of our statutory mechanics' lien.[1] In Crosby v. Hill, 1922, 121 Me. 432, 117 A. 585, our Court ruled that the statutory lien for repairs did not supersede or destroy the common law lien, nor did it create a new right, but merely provided a new and additional reme-dy. Some courts have reached a contrary conclusion. See, Bond v. Dudley, 1968, 244 Ark. 568, 426 S.W.2d 780; J. M. Lowe Auto Co. v. Winkler, 1917, 127 Ark. 433, 191 S.W. 927. The appellee's prosecution of its statutory lien remedy to the extent of obtaining an unpaid personal judgment against Rafferty neither operated as a waiver or abandonment of its common law lien which it could enforce by retaining possession of the truck upon which the repairs were made and services furnished. We note appellant's contention that, since no attachment of the truck was made as required by 10 M.R.S.A., § 3801, the statutory remedy to enforce the lien was doomed from the beginning. The Court below ruled otherwise on the ground that there was no need for an attachment where the truck was already in possession of the appellee-lien-claimant. We intimate no opinion on the point, since we rule that the statute (10 M.R.S.A., § 3801) did not become operative in the facts of the instant case.

The appellant, it is admitted, did not consent to the appellee's repair of the truck. Prior to the adoption of the Uniform Commercial Code, Title 11 of the Maine Revised Statutes Annotated, which became effective on December 31, 1964, no mechanics' lien attached where the re-

---

1. 10 M.R.S.A., § 3801. Vehicles, aircraft and parachutes

"Whoever performs labor by himself or his employees in manufacturing or repairing the ironwork or woodwork of wagons, carts, sleighs and other vehicles, aircraft or component parts thereof, or so performing labor furnishes materials therefor or provides storage therefor *by direction or consent of the owner thereof,* shall have a lien on such vehicle, aircraft or component parts thereof, and parachutes for his reasonable charges for said labor, and for materials used in performing said labor, and for said storage, *which takes precedence of all other claims and incumbrances* on said vehicles, aircraft or component parts thereof, and parachutes *not made to secure a similar lien, and may be enforced by attachment* at any time within 90 days after such labor is performed or such materials or storage furnished and not afterwards, provided a claim for such lien is duly filed as re-quired in section 3802. Said lien shall be dissolved if *said property has actually changed ownership prior to such filing."* (Emphasis supplied.)

10 M.R.S.A., § 3802. Filing in office of town clerk; inaccuracy does not invalidate lien

"The liens mentioned in section 3801 shall be dissolved unless the claimant within 30 days after the labor is performed, or storage furnished, files in the office of the clerk of the town in which the owner of such vehicle resides, * * * a true statement of the amount due him for such labor and materials or for storage, with all just credits given, together with a description of the vehicle manufactured or repaired sufficiently accurate to identify it and the name of the owner, if known, which shall be subscribed and sworn to by the person claiming the lien or *by someone in his* behalf, [etc.] . . . ."

pairs were made without "the direction or consent of the owner." This was the rule, whether the lien was a common law lien (Bath Motor Mart v. Miller, 1922, 122 Me. 29, 118 A. 715), or a statutory lien. Hartford Accident and Indemnity Company v. Spofford, 1927, 126 Me. 392, 138 A. 769. The owner of property, in the context of security interests and lien rights, under pre-Code decisional law meant the holder of the legal title. The priority of rights was largely premised, as appears in Small v. Robinson, 1879, 69 Me. 425, upon Chief Justice Shaw's observation in Hollingsworth v. Dow, 1837, 19 Pick. 228, at page 230, to the effect that

> "A lien is a proprietary interest, a qualified ownership, and, in general, can only be created by the owner, or by some person by him authorized."

Thus, prior to the adoption of the Code, the mere right to possession and use of a chattel, without the legal title, carried with it no authority to encumber the property with mechanics' liens without the consent of the holder of the legal title. See, Small v. Robinson, supra, where a bailee's contract for repairs did not give rise to the imposition of a lien against the bailor; Bath Motor Mart v. Miller, supra, where the non-consenting holder of a Holmes note prevailed over a lien-claimant for repairs to an automobile; Hartford Accident & Indemnity Co. v. Spofford, supra, where a conditional vendor won out over the garageman who claimed a lien; Eastern Trust & Banking Co. v. Bean & Conquest, Inc., 1952, 148 Me. 85, 90 A.2d 449, where the chattel mortgagee's title was held unaffected by a mechanics' lien claim in the absence of the mortgagee's consent or direction respecting the repairs.

The immediate issue before us is, whether the appellee, Colwell, had a valid common law mechanics' lien upon the truck, at the time it was deprived of the possession of it in the replevin action, which takes priority over the appellant's prior perfected security interest? Resolution of this issue, in turn, will depend upon the proper interpretation to be given to the pertinent provisions of the Uniform Commercial Code.

11 M.R.S.A., § 9–310 provides as follows:

> "When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise."

■ The common law mechanics' or artisan's lien is a lien given by "rule of law" within the purview of 11 M.R.S.A., § 9–310. Nickell v. Lambrecht, 1970, 29 Mich.App. 191, 185 N.W.2d 155.

Contrary to the thinking of the Maine draftsmen of the Code, as presented to the Legislature for adoption, to the effect that "[f]rom the language of the cases and the statutes expressly requiring consent of the owner, it seems clear that a lien cannot arise without such consent [and] [i]f so, this section would make no change in Maine law" (See, Volume 5, Maine Revised Statutes Annotated, Maine Code Comment, at page 333), the draftsmen of the Uniform Commercial Code, by their official comment, saw it differently:

> "Under chattel mortgage or conditional sales law many decisions made the priority of such liens turn on whether the secured party did or did not have 'title'. *This Section changes such rules and makes the lien for services or materials prior in all cases where they are furnished in the ordinary course of the lienor's business and the goods involved are in the lienor's possession.* Some of the statutes creating such liens expressly make the lien subordinate to a prior security interest. This Section does not repeal such statutory provisions. If the statute creating the lien is silent, even though it has been construed by decision

to make the lien subordinate to the security interest, this Section provides a rule of interpretation that the lien should take priority over the security interest." *(Emphasis added.)*

The Legislature, in enacting the Uniform Commercial Code (Chapter 362 of the Public Laws of 1963), worked a major overhaul on prior Maine commercial law. The Act specifically repealed prior statutory law dealing with commercial transactions so as to bring such transactions within the new concepts established by the Code. Section 2 of Chapter 362 of the Public Laws of 1963 added the following new meaning to well known commercial terms:

"The terms 'pledge', 'mortgage', 'conditional sale', 'lien', 'assignment' and like terms, when used in referring to a security interest in personal property shall include a corresponding security interest under chapter 190, the Uniform Commercial Code."

Under the Code, 11 M.R.S.A., § 1–201(37), a security interest is defined as "an interest in personal property or fixtures which secures payment or performance of an obligation. *The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer* (section 2–401) *is limited in effect to a reservation of a 'security interest'* . . .." *(Emphasis supplied.)* The same policy is also declared in the Article on Sales.

"Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest." See, 11 M.R.S.A., § 2–401.

We further note that Section 17 of Chapter 362 of the Public Laws of 1963 modified existing law to redefine a retail installment contract as a security agreement entered into in this State, *pursuant to which a purchase money security interest in* the motor vehicle, which is the subject matter of a retail installment transaction, is retained or taken by a retail seller from a retail buyer in order to secure, in whole or in part, the buyer's obligation, in substitution for the previous statutory language—*pursuant to which the title to, the property in or a lien upon the motor vehicle* . . . is retained or taken, etc.

We do give full recognition to the rule that ordinarily a new statute will not be considered as intending a reversal of long-established principles of law and equity *unless legislative intention to do so unmistakably appears.* Henderson v. Berce, 1946, 142 Me. 242, 50 A.2d 45, 168 A.L.R. 572. In relation to the Uniform Commercial Code, the Legislature has expressly mandated a liberal construction and application of the Act to promote its underlying purposes and policies which, among others, are to simplify, clarify and modernize the law governing commercial transactions and make uniform the law among the various jurisdictions. 11 M.R.S.A., § 1–102. Undoubtedly, the overall object of the Lawmakers, as evidenced by the Act itself, calls for a rule of interpretation that will consider the whole topic of commercial transactions in the light of both the statutory scheme and prior common law practices so that a single integrated harmonious system will result.

The language of 11 M.R.S.A., § 9–310 makes it clear that the lien of the holder of a perfected security interest is subordinate to the possessory lien of one who in the ordinary course of his business furnishes services or materials with respect to goods subject to the security interest, whether the possessory lien be based upon the common law or a statute, unless the lien is statutory and the statute expressly provides otherwise.

To read in Section 9–310 the limitational requirement of the common law that the perfected security interest holder must have given consent to the repairs before the common law mechanics' lien can arise would practically deprive that section of the Act of any meaningful effect, since there would

be few, if any, cases where such advance consent would be present.

The Michigan Court, in Nickell v. Lambrecht, supra, so concluded in the following language:

"It would subvert that apparent purpose to adopt the view of those pre-code cases that prefer the conditional sales vendor to the repairman and to hold for the plaintiff in this case on the ground that he did not consent to the creation of the repairman's lien and, thus, no lien arose at common law. To so hold would be to emphasize, to the exclusion of all other considerations, the retention by the plaintiff of title and might revitalize formalisms eliminated by the code. This would be contrary to main threads of the code: the de-emphasization of title in favor of a functional approach and the elimination of distinctions in the law's treatment of security interests based on their form."

Other authorities have similarly construed Section 9–310 of the Uniform Commercial Code respecting the priority of a mechanic's, garageman's or artisan's lien for repairs over an existing perfected security interest. Corbin Deposit Bank v. King, 1964, Ky., 384 S.W.2d 302; Westlake Finance Company v. Spearmon, 1965, 64 Ill.App.2d 342, 213 N.E.2d 80; Manufacturers Acceptance Corporation v. Gibson, 1967, 220 Tenn. 654, 422 S.W.2d 435, (but see, Forrest Cate Ford, Inc. v. Fryar, 1970, Tenn.App., 465 S.W.2d 882); Gables Lincoln-Mercury, Inc. v. First Bank and Trust Company of Boca Raton, 1969, Fla.App., 219 So.2d 90.

Appellant has cited authorities wherein the holder of the perfected security interest prevailed over the garageman's mechanics' or artisan's lien. In Commonwealth Loan Co. v. Berry, 1965, 2 Ohio St.2d 169, 207 N.E.2d 545, the Ohio Court concluded from the language of a motor vehicle registration of title act which provided that a security interest in an automobile noted on the face of the certificate of title was valid against other lienholders, this was clear evidence of legislative intent not to alter the well established law of Ohio as to priority of liens upon motor vehicles, notwithstanding the Uniform Commercial Code. In National State Bank of Newark v. Rapp, 1966, 90 N.J.Super. 300, 217 A.2d 325, Decker v. Aurora Motors, Inc., 1966, Alaska, 409 P.2d 603, First Security Bank of Idaho v. Crouse, 1967, 10 Cir., 374 F.2d 17, Bond v. Dudley, 1968, 244 Ark. 568, 426 S.W.2d 780, Checkered Flag Motor Car Company v. Grulke, 1968, 209 Va. 427, 164 S.E.2d 660, Pennington v. Alexander, 1968, Ill.App., 103 Ill.App.2d 145, 242 N.E. 2d 788, Municipal Equipment Co. v. Butch & Son Deep Rock, 1971, Iowa, 185 N.W.2d 756, there was a statute in each case which subordinated the possessory mechanics' lien to a perfected security interest and thus brought into play the exception clause of Section 9–310—unless the lien is statutory and the statute expressly provides otherwise.

That our conclusion correctly reflects legislative intendment, we believe, is further supported by the enactment of 10 M.R.S.A., § 4012 (Public Laws, 1965, c. 306, § 3), which became effective on May 20, 1965, prior to the transactions involved in this appeal and which reads as follows:

"A security interest perfected in accordance with Title 11 has priority over any lien created or referred to by this Title [10] unless the person claiming the lien has possession of the goods subject to the lien."

The Legislature, through emergency measure, in chapter 306 of the Public Laws of 1965 was correcting errors and inconsistencies in the Uniform Commercial Code which it had enacted two years previously. In the emergency preamble, the Legislature refers to the Uniform Commercial Code as a basic comprehensive law to govern commercial transactions and states that it is vitally necessary to correct errors and inconsistencies and eliminate confusion in commercial transactions. Undoubtedly, the Legislators had taken notice of the conflict-

ing interpretation given to Section 9–310 readily apparent between the Maine Code Comment and the Uniform Commercial Code Comment. By giving priority to perfected security interests over non-possessory liens created or referred to by Title 10, it indicated its approval of the broad intended sweep of Section 9–310 in relation to the subordination of perfected security interests to possessory liens as indicated in this opinion.

We hold that it was the purpose of the Uniform Commercial Code as adopted in Maine to give priority to common law mechanics' liens, where the repairman retains possession of the repaired goods. There was no error below.

The entry will be

Appeal denied.

All Justices concurring.