David L. PHILLIPS, et al.

v.

RIPLEY & FLETCHER CO.

Supreme Judicial Court of Maine.

Argued Jan. 4, 1988.
Decided May 31, 1988.

Alfred C. Frawley (orally), Brann & Isaacson, Lewiston, for plaintiffs.

David R. Hasting, II (orally), Fryeburg, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, GLASSMAN and SCOLNIK, JJ.

ROBERTS, Justice.

The plaintiffs appeal from a judgment of the Superior Court, Oxford County, based on a referee's report recommending a judgment against them on their claim against Ripley & Fletcher Co. for enforcement of two promissory notes, and in favor of Ripley & Fletcher on its counterclaim against them for breach of warranty. We affirm the judgment.

I.

In May of 1982 David Phillips, principal shareholder of Rafuse Oil Co., and Harold Jones, president and controlling sharehold-

er of Ripley & Fletcher, entered negotiations for the sale of Rafuse Oil Co. to Ripley & Fletcher. (Phillips represented himself as well as other members of his family who were the minority shareholders.) During the early stages of the negotiations, Phillips provided Ripley & Fletcher with two financial statements, dated December 30, 1981 and April 30, 1982, which purported to reflect the financial condition of Rafuse Oil during the stated time periods.

Phillips and Jones ultimately reached an agreement under which Ripley & Fletcher would pay shareholders of Rafuse Oil $90,000 for 100% of the outstanding stock. Before the referee, Jones testified that in making this offer he relied on the financial statements that had been supplied by Phillips, and that he would not have made the offer if he did not feel they could be relied on. In addition, Ripley & Fletcher introduced in evidence a letter it had sent to Phillips; the letter, dated June 1, 1982, outlined the terms of the proposed agreement and stated that the purchase was to be based on the outline of Rafuse Oil's assets and liabilities contained in the aforementioned financial statements. On June 9, 1982, an attorney representing Rafuse Oil drafted the final sales agreement that was executed by the parties. Under part IV of the agreement, entitled "Representation Of The Seller," is the following provision:

.   .   .   .   .

3. The purchase of the stock as set out above is based upon an outline of the assets and liabilities of the company as mailed to Harold D. Jones by David Phillips, showing the financial statement of the company as of April 30, 1982. As of the closing the seller represents that the position of the company will be the same with the exception of daily and normal income and expense adjustments from April 30, 1982 to the date of closing.

At the same time, Ripley & Fletcher executed promissory notes in favor of each shareholder. The promissory note executed in favor of Phillips was for the amount of $55,250 to be payable in six annual installments beginning October 31, 1982. (Similar promissory notes, for lesser amounts, were executed in favor of the minority shareholders.) Ripley & Fletcher made an initial payment of $25,000.

Upon taking over Rafuse Oil, Ripley & Fletcher began an audit of the company's books. Ripley & Fletcher's bookkeeper discovered that due to incorrect accounting entries, the financial statements provided to it by Phillips had overstated the net worth of Rafuse Oil. In October of 1982, when Ripley & Fletcher made the first payment on the note, a contemporaneous letter made clear that Ripley & Fletcher was investigating discrepancies in Rafuse Oil's financial statements; that the payment was made in order to prevent immediate default under the terms of the note; and that by making the payment, Ripley & Fletcher was not waiving any rights to claim reimbursement for any contract violations by Rafuse Oil. Ripley & Fletcher was unable to reconcile the incorrect entries contained in Rafuse Oil's books, and it ultimately concluded that the financial statements had overstated the value of Rafuse Oil by some $96,000. As a result, when the next installment payment on the promissory note became due, Ripley & Fletcher refused to pay.

On December 1, 1983, Phillips filed a complaint in the Superior Court to enforce the promissory notes. Ripley & Fletcher filed a counterclaim alleging breach of an express warranty and seeking reimbursement for monies already paid, as well as cancellation of the promissory notes.

The parties agreed to have the matter heard before a referee pursuant to M.R. Civ.P. 53(b)(1). The referee found that erroneous accounting entries caused the financial statements to misrepresent the value of the stock by more than $90,000, that Ripley & Fletcher had relied on the financial statements in agreeing to purchase Rafuse Oil, and that in light of the representations made by Rafuse Oil in the sales agreement, the distorted condition of the financial statements constituted a breach of a legal warranty. After finding that Phillips' breach of the express warranty

resulted in Rafuse Oil being worth some $90,000 less than represented, the referee determined that the promissory notes were unenforceable, and that Ripley & Fletcher was entitled to recover the monies already paid. With minor exceptions relating to the allocation of costs, the Superior Court accepted the decision of the referee and entered judgment in favor of Ripley & Fletcher on Phillips' claim against it as well as on its counterclaim. On appeal, Phillips argues that the referee erroneously concluded that Ripley & Fletcher's counterclaim sought damages for breach of warranty rather than rescission. Moreover, Phillips contends that in any event Ripley & Fletcher had failed to make out a claim for breach of warranty.

## II.

■ Initially, we address Phillips' contention that Ripley & Fletcher's counterclaim and the referee's decision were based on a rescission theory rather than a breach of an express warranty. Specifically, Phillips argues that because Ripley & Fletcher was not entitled to rescind the contract as a matter of law, the referee's report should have been rejected. In his brief and before us, Phillips has insisted on taking this position even though Ripley & Fletcher stated it was proceeding on a breach of warranty theory, and despite the fact that the referee's report expressly states that he found in favor of Ripley & Fletcher because Phillips had breached a legal warranty. Apparently, Phillips assumes that rescission is the only remedy that would entitle Ripley & Fletcher to a cancellation of the promissory notes as well as a return of all monies paid.[1] Although we do not agree with that part of the referee's decision that found the promissory notes unenforceable, our conclusion that the referee correctly found that Phillips was liable for breach of an express warranty leaves us with, in effect, the same result as the Superior Court judgment. *See Powers v. Rosenbloom,* 143 Me. 361, 62 A.2d 531 (1948) (Buyer may rescind contract of sale for breach of warranty and recover back purchase price, or he may sue on warranty and recover damages).

## III.

■ There was contradictory evidence as to whether at the time that Phillips provided Ripley & Fletcher with the financial statements there were oral express warranties made as to the accuracy of their contents. The referee after considering the evidence before him concluded that the parties intended to create an express warranty concerning the accuracy of the financial statements. We do not find the referee's decision to be clearly erroneous. In addition, we conclude that the sales agreement that was drafted by Phillips' attorney and included the aforementioned provision concerning representations as to the accuracy of the financial statements, created, as a matter of law, an express representation that the financial statements were accurate. In so concluding, we look for guidance to Maine's provisions concerning warranties with respect to the sale of goods. The statute pertains to express warranties concerning sales of goods and provides in pertinent part:

> (1) Express warranties by the seller are created as follows:
>
> > (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part

---

1. Phillips argues that because the referee actually applied the remedy of rescission, Ripley & Fletcher was bound to tender back the shares of stock. Because Rafuse Oil no longer existed, Ripley & Fletcher could not reconvey and, therefore, as a matter of law, it could no longer rescind the contract. Thus, in effect, the position taken by Phillips is that although Ripley & Fletcher had prevailed on its counterclaim for misrepresentations contained in the financial statements, it has no legal remedy.

We note that the referee's conclusion that Ripley & Fletcher was damaged in the amount of $90,000 appears to be the source of Phillips' confusion as to the remedy that was applied in this case. The fact that the referee determined that the financial statements overstated the value of Rafuse Oil by at least $90,000, which is the amount that Ripley & Fletcher originally paid for the company, is purely coincidental. By concluding that Ripley & Fletcher was entitled to retain the stock while also receiving *$90,000* on its action for breach of warranty, the referee was not recommending rescissory relief.

of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

.     .     .     .     .

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

11 M.R.S.A. § 2–313 (1964). Comments to this provision of the code suggests that the requirement that the affirmation become part of the "basis of the bargain" is meant to continue the uniform sales act requirement that the purchaser must show reliance on the affirmation in order to make out a cause of action for breach of warranty. *Id.* (comment) (citing R.S. ch. 185, § 12 (1954)). The language contained in the sales agreement is sufficiently direct and positive to create an affirmation of fact concerning the financial condition of the corporation and therefore we find, as a matter of law, it created an express warranty. In addition, the referee determined that Ripley & Fletcher had relied on the representations contained in the financial statement. We do not find this determination to be clearly erroneous.

■ Having determined that the Phillips made an express warranty that the financial statements were accurate, we must determine whether the referee's conclusion that the financial statements contained substantial inaccuracies was in error. We conclude that it was not. Ripley & Fletcher introduced evidence showing that erroneous entries and distorted figures had resulted in the financial statements reflecting that Rafuse Oil was worth far more than it actually was. Phillips failed to introduce any evidence showing that these errors were offset by other entries in the Rafuse books. We conclude, therefore, that the referee correctly determined that the financial statements did not accurately reflect the financial condition of Rafuse Oil. We also note that the fact that neither Phillips

nor the other shareholders were aware of the inaccuracies contained in the financial statements has no relevance in this action for breach of an express warranty. *See Henderson v. Berce,* 142 Me. 242, 50 A.2d 45 (1946). The only remaining issue is the amount of damages to which Ripley & Fletcher is entitled as a result of Phillips' breach of warranty.

■ The measure of damages in an action for breach of express warranty is the difference between the *actual value* of that which is warranted and the value *as expressly warranted* by the seller. *Id.* at 252, 50 A.2d 45; *Powers,* 143 Me. at 364, 62 A.2d 531. The actual price paid by the buyer is irrelevant. In the instant case, in purchasing Rafuse Oil Co. from Phillips, Ripley & Fletcher relied on the financial statements, which Phillips warranted to be accurate, to determine the value of Rafuse Oil. In actuality, Ripley & Fletcher received a company that was worth far less than it bargained for. Based on the evidence before him, the referee found that by the entry of fictitious figures the value of the corporation had been inflated by at least $90,000. Accordingly, the referee could conclude that the fictitious inflation resulted in at least a $90,000 difference between the actual value of the corporation as sold and the value as warranted without any necessity that the referee determine the actual value of the corporation at the time of sale.

Technically, the court should have found in favor of Phillips with respect to the notes and at the same time, found for Ripley & Fletcher on its counterclaim for breach of warranty in the amount of $90,-000. The ultimate judgment, however, in favor of Ripley & Fletcher remains as originally entered.

The entry is: Judgment affirmed.

All concurring.