## NICKELL v. LAMBRECHT

1. SALES—CONDITIONAL SALES—MOTOR VEHICLES—LEASE—TITLE-RETENTION CONTRACT.

A tractor-leasing agreement was actually a conditional sale or a title-retaining contract where the lessor rented the tractor to the lessee for a specified number of weeks at an agreed total rental payable in installments and, upon payment of the agreed amount, the lessor was to transfer title of the vehicle to the lessee without payment of additional consideration, and where the lessee agreed to keep the tractor in repair, pay license fees and taxes on it, and keep it insured.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 15 Am Jur 2d, Commercial Code § 49 *et seq.*
[2-7] 8 Am Jur 2d, Bailments § 227 *et seq.*
[8, 9] 38 Am Jur 2d, Garages, Parking and Filling Stations §§ 146, 149.
Lien for repairs to or services in connection with automobile. 62 ALR 1485.

2. LIENS—COMMON LAW—STATUTES.

The common-law artisan's lien survived enactment of a statutory artisan's lien and of a statutory garage-keeper's lien, and a repairman may rely on his common-law lien even though he has not complied with the statutory requirements or formalities (MCLA §§ 570.186, 570.301).

3. LIENS—COMMON LAW—POSSESSION.

The possessory element of a common-law artisan's lien was established where defendant motor vehicle mechanic retained possession of a tractor, which he had repaired at the request of the lessee-purchaser, until plaintiff lessor recovered it in a legal action for repossession.

4. LIENS — SECURITY INTEREST — PRIORITY — UNIFORM COMMERCIAL CODE.

A person who, in the ordinary course of his business, furnishes services or materials with respect to goods subject to a security interest, and who has a lien whether given by statute or rule of law, upon the goods in his possession, has priority under the Uniform Commercial Code over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise (MCLA § 440.9310).

5. LIENS—SECURITY INTEREST—PRIORITY—CONDITIONAL SALES—UNIFORM COMMERCIAL CODE.

The Uniform Commercial Code provision giving priority to liens for services or materials furnished with respect to goods subject to a security interest applies to any secured transaction, regardless of its form, which is intended to create a security interest in personal property, including a conditional sale or other title-retention contract, or a lease intended as security (MCLA § 440.9310).

6. LIENS—SECURITY INTEREST—PRIORITY—CONSENT—UNIFORM COMMERCIAL CODE.

The Uniform Commercial Code subordinates a perfected security interest to the possessory lien of one who in the ordinary course of business furnishes services or materials with respect to the goods subject to the security interest, without the consent of the holder of the security interest to the furnishing of the services or materials (MCLA § 440.9310).

7. LIENS—ARTISANS—COMMON LAW—SECURED TRANSACTION—PRIORITY.

A common-law possessory lien arises in favor of an artisan who repairs, on the purchaser's authorization, personal property

sold under a security agreement and this lien takes priority over the unpaid seller's security interest.

8. AUTOMOBILES—ABANDONMENT—GARAGE KEEPERS—NOTICE—FORFEITURE OF CLAIM—STATUTES.

Failure of defendant-garage keeper to report to police, as required by statute, that he was in possession of a tractor left by one other than the registered owner, did not result in forfeiture of his claim for repairs to the vehicle because the statutory notification provisions are not intended to operate where the vehicle has value beyond the amount of the repairs and where the registered owner learns where his vehicle is located within the statutorily-prescribed notification period (MCLA §§ 257.252[e], 570.302a).

9. AUTOMOBILES—ABANDONMENT—GARAGE KEEPERS—NOTICE—STATUTES—CONSTRUCTION.

Statutory provisions requiring a garage keeper to notify police of any vehicle left by one not the registered owner, or risk forfeiture of his claims for servicing, storage or repair of the vehicle, should not be read so as to eliminate the priority, established in the Uniform Commercial Code, of the .artisan's or mechanic's lien over the interest of one who, although the registered owner, holds only an unperfected security interest.

Appeal from Wayne, Horace W. Gilmore, J. Submitted Division 1 April 13, 1970, at Detroit. (Docket No. 8165.)  Decided December 10, 1970.

Complaint by Kelly F. Nickell against Frank M. Lambrecht, Jr., to recover possession of a vehicle. Judgment for plaintiff. Defendant appeals. Reversed and remanded.

*Ronald R. Stempien,* for plaintiff.

*Frazer & Popkin,* for defendant.

Before: T. M. BURNS, P. J., and LEVIN and DAVIDSON,* JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Levin, J.   In this case we hold that where a "lease" of personal property is in substance a conditional sale, a mechanic who repairs the property at the request of the lessee-purchaser has a common-law lien for the amount of the repairs superior to the security interest of the unpaid lessor-seller.

The plaintiff, the registered owner of a highway tractor, entered into a rental agreement leasing the tractor to Morse W. Robinson.   After the vehicle was delivered to Robinson it was damaged in a collision. The defendant, a garageman, repaired the damage but Robinson failed to pay a bill of $531.02.   He also failed to pay the agreed rental to the plaintiff.

When the plaintiff learned that the tractor was in the defendant's garage he made a demand for possession.   Defendant refused, claiming a lien on the tractor for the unpaid bill.

Plaintiff then commenced this action to recover possession of the vehicle.   The action was tried on a stipulation of facts by a judge sitting without a jury. The judge awarded the plaintiff a judgment of $900 for loss of the beneficial use of the tractor, and denied defendant's claim of lien and his counterclaim for the value of the repairs.

In this appeal from the judgment in plaintiff's favor, the defendant relies on three liens: the common-law artisan's lien, the statutory artisan's lien,[1] and the statutory garage-keeper's lien.[2]

Although in form a lease, the rental agreement between the plaintiff and Robinson was in actuality a conditional sales or title-retaining contract.   Under the rental agreement, Robinson leased the tractor for 15 weeks at an agreed rental of $4,800, payable $300 upon delivery and $300 weekly thereafter. Upon payment of the $4,800, the plaintiff agreed to

---

[1] MCLA § 570.186 (Stat Ann 1953 Rev § 26.402).
[2] MCLA § 570.301 (Stat Ann 1960 Rev § 9.1711).

transfer title of the vehicle to Robinson, *i.e.*, without payment of additional consideration other than the "rental" payments. Additionally, Robinson agreed to keep the tractor in repair, to pay all applicable license fees and taxes imposed in respect of its use or operation and to provide collision and comprehensive insurance coverage for loss due to fire, theft and other risks, and public liability and property damage insurance.

In *Joy Oil Co.* v. *Fruehauf Trailer Co.* (1947), 319 Mich 277, the plaintiff, Joy Oil, leased semitrailers to Advance Petroleum Transport Company. At the request of Advance Petroleum, defendant Fruehauf made repairs. The Court held that Fruehauf did not have a garage-keeper's lien because Joy Oil, the registered owner of the trailer, had not requested or consented to its repair and, under the garage-keeper's lien statute, a lien can arise only when the services or materials are furnished "at the request or with the consent of the registered owner of the vehicle".[3]

The lease between Joy Oil and Advance Petroleum required the lessee to keep the trailer in repair. Nevertheless, the Supreme Court ruled that the proofs failed to support Fruehauf's assertion that the lessee was acting as the agent of the owner (p 282):

"The proofs show that the semitrailers were taken to Fruehauf by the Advance company with the consent of Joy Oil, but the record fails to show that Joy Oil knew of or consented to Fruehauf making the repairs. We must conclude that Fruehauf, in failing to prove that the repairs were made at the request of or with the consent of Joy Oil, has not sustained the burden of establishing a statutory garage-keeper's lien."

[3] See footnote 2 for citation of statute.

In this case, in contrast with *Joy Oil,* the agreement in suit is, in reality, a conditional sales or title-retaining contract. The question whether a repairman's lien should take priority over the rights of a conditional sales vendor has been the subject of considerable litigation and great contrariety of judicial opinion. The cases are collected in extensive ALR annotations.[4]

In *Joy Oil* the Court reserved the question whether the common-law artisan's lien was replaced by the enactment of the statutory artisan's lien and, as to motor vehicles, by the enactment of the garage-keeper's lien act.[5]

It is a "well-settled principle of the common law that he who by labor, skill or materials adds value to the chattel of another whether under an express or an implied agreement has. a possessory lien thereon for the value of his services and may retain the chattel in his possession until the same be paid". Brown, The Law of Personal Property (2d ed), § 107, p 511.[6]

In this case the defendant repairman established the possessory element of the common-law lien; he retained possession of the tractor until it was recovered by the plaintiff as a result of the commencement of this action.

---

[4] Anno: Priority as between lien for repairs and the like and right of seller under conditional sales contract, 36 ALR2d 185; Anno: Priority as between artisan's lien and chattel mortgage, 36 ALR2d 224.

See Brown, The Law of Personal Property (2d ed), § 112, p 534 *et seq.;* 2 Gilmore, Security Interests in Personal Property, § 33.3, p 875 *et seq.*

[5] In *Joy Oil* the garage keeper surrendered the trailer and later obtained repossession within the 90-day period provided in the garage-keeper's lien statute of re-establishment of the lien. The Court ruled (p 283):

"If a common-law lien exists in this state it is lost upon an unconditional surrender of the property. * * * If Fruehauf ever had a common-law lien, it was lost upon surrender of the property."

[6] See, also, 8 Am Jur 2d, Bailments, § 229, p 1121; 38 Am Jur 2d, Garages, etc., § 138, p 435; 15 Callaghan's Michigan Civil Jurisprudence, Liens, § 3, p 548.

The common-law artisan's lien has been held to survive enactment of a statutory artisan's lien[7] or a statutory garage-keeper's lien[8] and, accordingly, a repairman may rely on the common-law lien even though he has not complied with the statutory requirements or formalities.[9] The Michigan statutory artisan's lien goes back to at least 1846.[10] The garage-keeper's lien act was adopted in 1915.[11] Now, at a time well over 50 years after the enactment of these statutory provisions, we think it a sounder course to follow the lead of the courts of other jurisdictions, which, in general, have decided this question in favor of the continued viability of the

---

[7] See *Grusin* v. *Stutz Motor Car Co. of America* (1933), 206 Ind 296 (187 NE 382); *Stallard* v. *Stepp* (1922), 91 W Va 60 (112 SE 184); *Williamson* v. *Winningham* (1947), 199 Okla 393 (186 P2d 644). *Cf. Braufman* v. *Hart Publication, Inc.* (1951), 234 Minn 343 (48 NW2d 546, 25 ALR2d 1030); *Towle* v. *Raymond* (1877), 58 NH 64.

[8] See 61A CJS, Motor Vehicles, § 744, p 691; *Gale & Company* v. *Hooper* (Mo App, 1959), 323 SW2d 824, aff'd (Mo, 1959), 330 SW 2d 826; *Hiltz* v. *Gould* (1954), 99 NH 85 (105 A2d 48); *Crosby* v. *Hill* (1922), 121 Me 432 (117 A 585); *Grusin* v. *Stutz Motor Car Co. of America, supra; North End Auto Park, Inc.* v. *Petringa Trucking Co., Inc.* (1958), 337 Mass 618 (150 NE2d 735, 739); *cf. City National Bank of Wichita Falls* v. *Laughlin* (Tex Civ, 1919), 210 SW 617.

New Jersey courts have held that the common-law artisan's lien does not apply to motor vehicles, and hence the express statutory priority of the lien of a conditional sales vendor over the statutory lien of a garage keeper cannot be avoided by claiming a common-law lien. *National Bank of Newark* v. *Rapp* (1966), 90 NJ Super 300 (217 A2d 325), *reversed* on other grounds (1967), 49 NJ 457 (231 A2d 222); *B. C. S. Corp.* v. *Frick* (1941), 19 NJ Misc 129 (18 A2d 560).

It is, of course, a separate and different question—one that we need not decide in this case—whether the statutory artisan's lien is replaced as to motor vehicles by the statutory garage-keeper's lien. See *Yellow Mfg. Acceptance Corp.* v. *Bristol* (1951), 193 Or 24 (236 P2d 939); *J. M. Lowe Auto Co.* v. *Winkler* (1917), 127 Ark 433 (191 SW 927); *Blanchard* v. *Donaldsonville Motors Co.* (La App, 1937), 176 So 669.

[9] 2 Gilmore, Security Interests in Personal Property, § 33.2, pp 874, 875.

[10] See RS 1846, ch 126, § 36. See footnote 1 for citation of present statute.

[11] PA 1915, No 312. See footnote 2 for citation of present statute.

common-law lien, than ourselves to embark on a futile search for legislative intention.

The plaintiff did not consent to the defendant's repair of the damaged tractor. At common law an artisan could not acquire a lien unless the owner consented to the making of the repair. It was not enough that a person temporarily in possession of the chattel property had left it with the artisan for repair.[12] Exceptions were made in specific cases on the theory that the owner had impliedly consented.[13] And then there developed the diverse lines of cases, previously referred to, on the question whether the common-law lien should prevail over the rights of a conditional sales vendor.[14]

There is no need for us to choose between these competing decisions. The choice has been made by the draftsmen of the Uniform Commercial Code; § 9–310[15] provides:

"When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise."

The common-law lien is a lien given by "rule of law". It is not a statutory lien and, accordingly, the "unless" clause is inapplicable.[16]

---

[12] Brown, The Law of Personal Property (2d ed), § 111, p 530; *Hollingsworth* v. *Dow* (1837), 19 Pick (Mass) 228.

[13] Brown, The Law of Personal Property, *op cit; White* v. *Smith* (1882), 44 NJL 105 (43 Am Rep 347); *Southwest Engine Company* v. *United States* (CA10, 1960), 275 F2d 106.

[14] See footnote 4.

[15] MCLA § 440.9310 (Stat Ann 1964 Rev § 19.9310).

[16] The question whether the garage-keeper's lien has priority over an unpaid conditional sales vendor would involve not only a choice between the competing pre-UCC decisions; it would also involve an

Under § 9–102 of the Uniform Commercial Code,[17] article 9, concerning secured transactions, applies to any transaction regardless of its form which is intended to create a security interest in personal property, including a *"conditional sale,* trust receipt, other lien or *title retention contract* and *lease* or consignment *intended as security"*. (Emphasis supplied.) Manifestly, a transaction, such as here, where the nominal lessor delivers possession of the property to the nominal lessee under an agreement providing that upon payment of the entire agreed rental the lessor is required, without further consideration, to transfer title to the lessee, is a lease intended as security and, thus, subject to the provisions of article 9.[18]

In subordinating the lien of the holder of a perfected security interest[19] to the possessory lien of one who in the ordinary course of his business furnishes services or materials with respect to goods subject to the security interest, the framers of the Uniform Commercial Code clearly chose to dispense with the consent of the holder of the security interest. As Professor Gilmore, the draftsman of article 9, puts

interpretation of the "unless" clause of UCC § 9–310. For a discussion of the "unless" clause, see 2 Gilmore, Security Interests in Personal Property, § 33.5, p 887.

[17] MCLA § 440.9102 (Stat Ann 1964 Rev § 19.9102).

[18] "Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security." MCLA § 440.1201(37) (Stat Ann 1964 Rev § 19.1201[37]).

[19] The failure of the plaintiff to perfect his security interest by recording in accordance with the provisions of MCLA § 440.9302(3) (4) (Stat Ann 1964 Rev § 19.9302[3] [4]); MCLA §§ 257.217, 257-.222, 257.238 (Stat Ann 1964 Rev §§ 9.1917, 9.1922, 9.1938) does not enlarge his rights, as the holder of an unperfected security interest, under § 9–310.

it, "the code adopts the policy of subordinating security interests to service liens".[20]

It would subvert that apparent purpose to adopt the view of those pre-code cases that prefer the conditional sales vendor to the repairman and to hold for the plaintiff in this case on the ground that he did not consent to the creation of the repairman's lien and, thus, no lien arose at common law. To so hold would be to emphasize, to the exclusion of all other considerations, the retention by the plaintiff of title and might revitalize formalisms eliminated by the code. This would be contrary to main threads of the code: the de-emphasization of title in favor of a functional approach and the elimination of distinctions in the law's treatment of security interests based on their form.[21]

It would be entirely foreign to these basic concepts to say that because a seller has retained title his consent is required and, therefore, a common-law lien cannot arise. To so hold would deprive § 9–310 of any meaningful effect where the unpaid seller does not transfer title.[22] If the operative effect of § 9–310 in such a case is limited to situations where the unpaid seller has expressly consented in advance to the creation and superiority of the repairman's lien, then there will be few, if any, such cases where § 9–310 will operate at all.[23]

---

[20] 2 Gilmore, Security Interests in Personal Property, § 33.5, p 886.

[21] MCLA § 440.9202 (Stat Ann 1964 Rev § 19.9202). See, also, official UCC comment reprinted as annotation to MCLA and Stat Ann, and Steinheimer, Practice Commentary reprinted as annotation to MCLA.

[22] See Note, Nonconsensual Liens Under Article 9, 76 Yale LJ 1649, 1661 (1967). See, generally, Murphey, Cars, Creditors, and the Code: The Diverse Interpretations of Section 9–310, Wash Univ LQ (1970), p 135.

[23] It is unlikely that a conditional sales or title retaining agreement or lease intended as security—which documents are usually drafted by the seller—would contain an express provision giving an artisan's service lien priority over the unpaid seller's lien. Compare *Denison* v. *Shuler* (1882), 47 Mich 598. Manifestly, the purpose

The contest here, reduced to essentials, is between an unpaid seller of a motor vehicle and a mechanic who repaired it. If, as customarily occurs, the title had been transferred to the purchaser, as, indeed, may be required or contemplated by law,[24] and he had become the "registered owner", the mechanic would have prevailed under the garage-keeper's lien statute. By our holding that the mechanic enjoys a common-law lien, essentially the same result is achieved. This uniformity in result is in harmony with the Uniform Commercial Code objective of eliminating differences in the treatment of security interests based on the form of the transaction. This result does not penalize the seller, it merely avoids rewarding him for retaining title.

We hold that when personal property is sold under a security agreement (here, a conditional sales contract in the form of a lease) and the purchaser authorizes the repair of the property, a common-law possessory lien arises in favor of the artisan for the amount of the repairs and that such lien takes priority over the unpaid seller's security interest.

One further question remains. The plaintiff claims that the failure of the defendant garage keeper to report that he was in possession of a vehicle left by one other than the registered owner forfeited his claim for the repair of the vehicle. The plaintiff relies on the provisions of MCLA § 257.252

---

of the code was to eliminate such disputes and to prefer the repairman's lien, common law or statutory, where he retains possession of the goods except where the lien is statutory and "the statute *expressly* provides otherwise." (Emphasis supplied.)

24 See footnote 19.

25 "Any vehicle left in a garage for more than 10 days, where the same has not been left by the registered owner under a contract of service, storage or repair, shall be deemed an abandoned vehicle, and shall be reported by the garagekeeper to the sheriff of the county or the police department of the unit of government in which the garage is located. Any garagekeeper who fails to report the possession of such a vehicle at the end of 10 days, or who fails to report the possession of such a vehicle, within 10 days of the date he learns

(e) (Stat Ann 1970 Cum Supp § 9.1952[e])[25] and
MCLA § 570.302a (Stat Ann 1968 Rev § 9.1712[1]).[26]

We are persuaded that these provisions are not
intended to operate in a case such as this where the
vehicle has value beyond the amount of the repairs
and the registered owner learns where the vehicle
is located within the ten-day period prescribed in the
statutory provisions relied on. In such a case these
provisions regarding the disposition of abandoned
vehicles are not of any practical importance. Fur-
thermore, the cited statutory provisions should not
be read so as to eliminate the priority, established in
the commercial code, of the artisan's or repairman's
lien over the interest of one who, as in this case, al-
though the registered owner, holds only an unper-
fected security interest.[27] Our previous observations
regarding the true status of the plaintiff—an unpaid
seller—are again relevant.

---

that it was not left by the registered owner, shall forfeit all claims
for servicing, storage or repair of the vehicle. All abandoned vehicles
left in garages shall be turned over to the sheriff of the county or
the police department of the unit of government in which the garage
is located to be by him sold in accordance with the procedures set
forth in this section." MCLA § 257.252(e) (Stat Ann 1970 Cum
Supp § 9.1952[e]).

Despite some ambiguity we are satisfied that the 10-day period
does not begin to run until the garage keeper learns that the vehicle
was not left by the registered owner.

In this case it appears that the defendant learned that the vehicle
had not been left by the registered owner when the plaintiff notified
the defendant of his interest.

[26] "If the garage keeper discovers, subsequent to furnishing any
labor, material or supplies for any vehicle stored, maintained, sup-
plied or repaired by him, that the vehicle was not currently registered
at the time it was left in the garage for labor, material, supplies,
storage or repair, or that the person who left the vehicle in the
garage was not the registered owner of it, the garage keeper shall
notify the sheriff of the county within 15 days of discovering such
facts. The vehicle shall then be turned over to the sheriff of the
county to be disposed of according to the terms of section 252 of
Act No 300 of the Public Acts of 1949, as amended, being section
257.252 of the Compiled Laws of 1948." MCLA § 570.302a (Stat
Ann 1968 Rev § 9.1712[1]).

[27] See footnote 19.

Reversed and remanded to the trial court for the entry of a judgment in defendant's favor for the amount of the repairs.[28]

All concurred.

[28] The parties have stipulated that the repair bill of $479.01 was reasonable and that the repairs were necessary.