**In re Steven R. LOTT, Debtor.**

**Bankruptcy No. GL 95–83518.**

United States Bankruptcy Court, W.D. Michigan.

June 12, 1996.

David J. Anderson, Kevin W. Manning, Lansing, Michigan, for Steven R. Lott.

David R. Powers, Bay City, Michigan, for Heritage Equipment Co.

*OPINION REGARDING VALIDITY
OF ARTISAN'S LIEN*

JAMES D. GREGG, Bankruptcy Judge.

## I. ISSUE

Under Michigan law, is continuous possession required to maintain a valid and enforceable statutory artisan's lien?

## II. JURISDICTION

The court has jurisdiction over this adversary proceeding.[1] 28 U.S.C. § 1334 and § 157(b)(1). This dispute is a core proceeding under 28 U.S.C. § 157(b)(2)(C), (E), (K), and (O). This opinion constitutes the court's findings of fact and conclusions of law. FED. R.BANKR.P. 7052.

## III. PROCEDURAL BACKGROUND

On July 17, 1995, Steven R. Lott ("Debtor") filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code. On October 10, 1995, the Debtor filed a "Motion for Turnover Property or, in the Alternative, to Determine Secured Status" (sic). The Debtor requested a court determination that a certain John Deere 8440 Tractor, No. 8002393 ("tractor"), should be turned over to him by Heritage Equipment Co. ("Heritage"). The Debtor also requested a court determination that Heritage is an unsecured creditor who holds a "valueless lien". (Dkt. No. 36.)

On November 14, 1995, Heritage filed an Objection to Confirmation of Debtor's Chapter 13 Plan. (Dkt. No. 58.) Heritage asserted it holds a possessory statutory artisan's lien under Michigan law and the Debtor's plan did not properly treat it as a secured creditor who held an interest in the tractor.

Heritage also opposed the Debtor's requested turnover of the tractor and filed its Brief in Opposition to Motion of Debtor for Turnover. (Dkt. No. 57.)

At a hearing on December 12, 1995, the court ordered a turnover of the tractor by Heritage to the Debtor based upon certain conditions. The court then signed an Order Regarding Possession Pending Final Determination. (Dkt. No. 67.) Also at the hearing, the parties submitted a consent "Order Regarding Procedure and Joinder Regarding [the tractor issue]." (Dkt. No. 66.)

On December 15, 1995, the Debtor filed an Amended Motion for Turnover of Property or, in the Alternative, to Determine Secured Status. (Dkt. No. 68.) In the amended motion, the Debtor alleged John Deere Credit and Dart National Bank each held perfected security interests in the tractor and requested damages from Heritage because "of the deprivation of the subject tractor." The Debtor also filed a Memorandum in Support of Motion of Debtor for Turnover of Property.[2] (Dkt. No. 69.)

On December 19, 1995, the Debtor filed a Second Amended Chapter 13 Plan. (Dkt. No. 74.) The amended plan provided that if Heritage is determined to be a secured creditor, it would be paid its lien amount from the proceeds of the sale of the tractor. To the extent Heritage is not a secured creditor, it would receive a distribution on its allowed claim as an unsecured creditor. On December 19, 1995, without objection by any party in interest, including Heritage, the court confirmed the amended chapter 13 plan.[3] (Dkt. No. 77.)

On February 14, 1996, an evidentiary hearing took place regarding the dispute.[4] At

---

**1.** Although the original request for relief was by motion, per a stipulated order dated December 12, 1995, the court has treated this dispute as an adversary proceeding under FED.R.BANKR.P. 7001.

**2.** Although the pleadings filed were couched in terms of a requested turnover, in actuality, the Debtor sought a determination that Heritage's claimed artisan's lien is invalid; that a statutory artisan's lien is avoidable under 11 U.S.C. § 545(1)(D); or is avoidable as a preference under 11 U.S.C. § 547; and that damages should be awarded.

**3.** On December 27, 1995, the court signed an amended order confirming plan which clarified the amount of the allowed attorneys' fees for the Debtor's counsel; in all other respects, the original confirmation order remained the same. (Dkt. No. 81.)

**4.** One day before the hearing, Heritage filed a brief in response to the Debtor's requested relief. Among other things, Heritage claimed that continuous possession is not required to maintain a valid artisan's lien.

the hearing, the court heard testimony from the Debtor and from a representative of Heritage. Exhibits were admitted into evidence. The court took the matter under advisement and, as requested by the parties, permitted opposing counsel to file written closing arguments and post-hearing memoranda. Also at the hearing, the parties submitted written stipulated facts which addressed some of the issues and a stipulation whereby Dart National Bank agreed its security interest would be subordinate to any valid artisan's lien held by Heritage.[5] (Dkt. Nos. 86 and 87.) Subsequently, the parties each filed written closing arguments and additional legal memoranda.[6] (Dkt. Nos. 93, 102, 105, and 107.)

## IV. FACTS[7]

The Debtor is the owner of the tractor which is subject to a valid and perfected first priority security interest held by Deere Credit Services ("Deere").[8] Deere's allowed secured claim on the tractor, as of the filing date, is $22,220.81 and the obligation bears interest at 8.9% per annum. (Trans. pp. 36–37.) The value of the tractor is between $29,500 and $31,000. (Trans. pp. 20 and 59; Stipulated Facts ¶ 15.)

On May 17, 1994, Heritage picked up the tractor, with consent, from the Debtor's farm, to perform repairs on the engine.

Heritage completed an engine overhaul and, per an invoice dated August 2, 1994, billed the Debtor $7,322.36, which still remains unpaid. (Heritage Exh. A.) The invoice amount is subject to a time price differential of two percent per month until paid.[9]

After the initial repairs were completed, and without receiving any payment, Heritage delivered the tractor to the Debtor in August, 1994. Possession of the tractor was voluntarily and unconditionally relinquished by Heritage to the Debtor. The invoice does not indicate that Heritage claimed any artisan's lien. At the time the tractor was delivered, there was no written or oral communication to the Debtor that Heritage claimed any lien on the tractor for the unpaid invoice. (Trans. pp. 22–23.)

On May 15, 1995, at the Debtor's request, Heritage again picked up the tractor, from the Debtor's farm for warranty repairs on the engine. The repair bill for this work was $1,659.41 per an invoice dated June 17, 1995. (Heritage Exh. C.; Trans. pp. 32–33.) Heritage will not be reimbursed from Deere on a portion of the second repair unless the Debtor first pays Heritage. (Trans. p. 35.)[10]

After Heritage again took possession of the tractor, it prepared a "Claim of Lien" which was sent to the Debtor, Deere, Dart

---

**5.** Notwithstanding proper notice of the hearing, Deere Credit Services did not appear at the hearing or file any papers regarding the priority under its security agreement vis-a-vis Heritage's asserted artisan's lien.

**6.** Notwithstanding the flurry of paperwork submitted by the parties, the court found it necessary to undertake extensive additional independent research regarding the issue presented. This has resulted in some delay in releasing this opinion.

**7.** The court's findings of fact are based upon (1) the Stipulation Regarding Facts for Purposes of Hearing on Motion of Debtor for Turnover of Property filed on February 14, 1996; (2) the testimony of the witnesses at the hearing per the transcript ("Trans."); (3) the exhibits admitted into evidence; and (4) pleadings in the court's base case file.

**8.** The parties stipulated that the security interest is held by Deere & Co. The attachment to the creditor's proof of claim states the name of the

secured party is Deere Credit Services, a division of Deere & Co.

**9.** The parties agree Heritage's time price differential indebtedness may be subject to offsets to which the Debtor may be entitled and is also subject to applicable law, e.g., 11 U.S.C. § 506(b). As of May 17, 1995, Heritage claimed the unpaid repair bill, including interest, totaled $8,640.32. (Heritage Exh. B.) As of July 17, 1995, the chapter 13 filing date, Heritage claimed the unpaid repair bill, including interest, to be $9,372.66. (Heritage Proof of Claim.)

**10.** The evidence on this issue was very confusing. The court finds that if Heritage is ultimately paid by the Debtor, e.g., upon satisfaction of an artisan's lien when the tractor is sold, Deere will reimburse Heritage for the parts for the second repair in an amount of $173.47. This would reduce the second repair bill from $1,659.41 to $1,485.97. If no payment is made by the Debtor, no reimbursement for the cost of the parts will be given by Deere to Heritage.

National Bank, and Mason State Bank.[11] This document claimed an artisan's lien and stated the last repair work was conducted on August 2, 1994. The document asserted the lien amount owed was $8,640.32, which was the invoice amount of the *first* repair plus the then-accrued two percent per month time price differential. The repair of the tractor was subsequently completed on June 17, 1995.

Heritage then refused to relinquish possession of the tractor until the prior invoice was paid.[12] Because Heritage refused to release the tractor, the Debtor rented two tractors to bore plow, chisel plow, and operate a disc and soil finisher during May and June, 1995. (Trans. pp. 46–50.) A John Deere 8450 tractor was rented from the Debtor's father for approximately 160 hours at $25 per hour with a total charge of $4,400.00. Another tractor was rented from Michigan CAT for $1,080.00. (Debtor's Exh. A.) The total amount of tractor rental charges is $5,480.00.

As of the chapter 13 filing date, Heritage still retained possession of the tractor. The tractor was released to the Debtor pursuant to a court order dated December 12, 1995, without prejudice to Heritage's asserted artisan's lien.

## V. DISCUSSION

### A. *Does Heritage Hold an Artisan's Lien?*

■ Heritage claims a lien on the tractor under the Michigan artisan's lien statute.[13] Property rights, including whether a valid artisan's lien exists, are determined by state law unless a federal interest mandates a

different result. *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *Matter of Delex Mgmt.*, 155 B.R. 161, 164 (Bankr.W.D.Mich.1993). In this proceeding, the court is called upon to decide the rather straightforward question of whether Heritage holds a Michigan statutory artisan's lien which is cognizable in bankruptcy.

Michigan law recognizes and permits the creation of an artisan's lien as follows:

> *When any person shall deliver to any mechanic,* artizan [sic], *or tradesman, any* watch, clock, article of furniture or jewelry, implement, clothing or other *article of value, to be* altered, fitted or *repaired, such mechanic,* artizan [sic] *or tradesman shall have a lien thereon* for the just value of the labor and skill applied thereto by him, *and may retain possession of the same until such charges are paid.*

MICH.COMP.LAWS ANN. § 570.186 (emphasis added).

Michigan law permits enforcement of an artisan's lien as follows:

> In either of the cases mentioned in the 2 preceding sections, *if the owner of the property,* materials, or stock so *delivered,* or the person entitled thereto *shall not, when such article shall have been* constructed, completed, altered, fitted, or *repaired,* or the time having expired for the keeping such stock, *and the same being ready to be delivered to such owner* or other persons, and the charges thereon shall be due and payable, *pay to such mechanic,* artisan, tradesman, or other person *the amount of such charges, the*

---

11. The claim of lien gave notice as of May 17, 1994, but was dated May 25, 1995. Given the fact that the tractor was picked up by Heritage on May 15, 1995, the time of notice appears to be a typographical error and should have stated "May 17, 1995."

12. The Debtor testified it was his understanding that the tractor would not be released unless the entire obligation owed to Heritage, in a total amount of $19,492.07, per a statement dated January 31, 1995, was paid. (Debtor's Exh. B.; Trans. pp. 42–44.) However, later the Debtor testified that he *assumed* that he was required to pay the entire statement rather than only the first tractor repair bill. (Trans. pp. 54–56.) Based upon the Claim of Lien notice, the court finds

Heritage would have relinquished possession of the tractor if the Debtor had paid the first repair invoice. (Heritage Exh. B.)

13. In its legal memoranda and statements to the court, Heritage has stated it does *not* claim a garageman's lien. MICH.COMP.LAWS ANN. § 570.31. (Brief in Opposition to Motion of Debtor for Turnover, Docket No. 57, p. 2.) Heritage readily admits that a common law artisan's lien requires possession and the lien is lost when possession is relinquished; it therefore does *not* claim a common law artisan's lien. (Brief in Response to Debtor's Memorandum in Support of Motion of Debtor for Turnover of Property, Docket No. 83, pp. 1–2.)

*person having such lien may enforce the same* as hereinafter provided: *Provided, however, [a]ny mechanic,* artisan or tradesman who shall make, clean, alter or repair any article of personal property at the request of the owner or legal possessor of personal property *shall have a lien on such property* so made, cleaned, altered or *repaired* for his just and reasonable charges for work done, and material furnished, and *may hold and retain possession of the same until such just and reasonable charges shall be paid, and in default of payment may foreclose said lien,* as hereinafter provided. *When any property upon which a mechanic,* artisan, tradesman, or other person shall have a lien for unpaid charges under this act *shall remain in possession of a mechanic,* artisan, tradesman, or other person *without payment and without proceeding at law in reference thereto, for a period of 9 months, such mechanic,* artisan, tradesman, or other person *may sell such property at public sale* upon like notice and proceeding as in the case of a constable sale on execution. Thirty days before the date of said sale, such mechanic, artisan, tradesman or other person shall give notice of the time and place of said sale and the amount claimed, by depositing the same in the postoffice with postage prepaid and registered and addressed to the last known address of the said owner or person who delivered said property to such mechanic, artisan, tradesman, or other person and which notice may be in substance as follows:

[form of notice omitted]

If such owner or other person in his behalf shall not pay the amount of such claim and charges before the advertised day of sale, said property shall thereupon be sold pursuant to said notice of sale, to the highest bidder, and said mechanic, artisan, tradesman or other person may become the purchaser. The proceeds of such sale shall be applied to the payment of said lien, costs and expenses, and the balance, if any, shall be paid to the city or township clerk of the city or township where such sale takes place, for the benefit of such owner, and notice of such deposit shall be sent to him by registered mail.

MICH.COMP.LAWS ANN. § 570.187 (emphasis added).

The quoted statutory language is somewhat cumbersome and cryptic. The statute does not state in a direct manner that *continuous* possession is required to maintain an artisan's lien that may be enforced under the statute. Heritage argues that continuous possession is not required and when it reobtains possession of the tractor for the second repair it could then enforce a lien for costs billed for the first repair. The Debtor argues that this is impermissible under the law.

In any case involving a question of statutory interpretation, the first step is to closely examine the language of the statute itself. *See generally, Couture v. General Motors Corp.,* 125 Mich.App. 174, 335 N.W.2d 668 (1983) (citing *The Lamphere Schools v. Lamphere Federation of Teachers,* 400 Mich. 104, 110, 252 N.W.2d 818 (1977)). The terms used in the statute should be given their plain and ordinary meaning, absent a legislative intent to the contrary. *Id. Cf. Pioneer Investment Services v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 388–90, 113 S.Ct. 1489, 1495, 123 L.Ed.2d 74 (1993) ("Courts properly assume, absent sufficient indication to the contrary, that Congress intends the words in its enactments to carry their ordinary, contemporary, common meaning.").

After reading (and rereading) the partially obscure statutory language, one must conclude that continuous possession is required. The Michigan artisan's lien statute permits Heritage to retain possession of the tractor "until such charges are paid." MICH.COMP. LAWS ANN. § 570.186. The Michigan statute also provides Heritage shall have a lien on the tractor, to secure repayment of its first repair bill, and "may hold and *retain* possession of the same until such just and reasonable charges shall be paid, and in default of payment may foreclose said lien." MICH. COMP.LAWS ANN. § 570.187 (emphasis added.). To enforce the artisan's lien, the tractor "shall *remain* in the possession of a mechanic [i.e., Heritage] ... without pay-

ment ... for a period of 9 months." *Id.* (emphasis added).

The most natural reading of the statutory provisions supports an interpretation that if possession does not "remain" with the mechanic, the artisan's lien is lost. If the mechanic does not "hold and retain possession," it cannot foreclose on its lien. The plain and ordinary meaning of the terms "remain" and "retain" as used in the statute strongly support the conclusion that continuous possession is required to enforce the lien. Once possession was relinquished by Heritage, there was no longer any lien on the tractor to secure repayment of its repair bill.[14]

This common sense reading of the statute is also consistent with common law origins and the legislative development of the Michigan artisan's lien statute. In an effort to decipher the abstruse language of the current statute, the court has examined all of the prior versions of the Michigan statute. The first artisan's lien statute appears to have been passed in 1846. MICH.REV.STAT., tit. XXIV, ch. 126, §§ 36–41 (1846). The language in the 1846 statute is identical to current statutory provisions pertaining to the creation of an artisan's lien. *Compare* MICH.REV.STAT., tit. XXIV, chap. 126, § 36 (1846) *with* MICH.COMP.LAWS ANN. § 570.186. However, the lien enforcement mechanism differs. Under the original 1846 statute, a lawsuit before the justice of the peace, a judgment (whether *in personam* or by attachment), and execution thereon was required to enforce the lien. *Id.* §§ 37–41. As discussed below, this provision has been amended and it is no longer necessary to file a separate lawsuit in order to enforce the lien. *See infra.*

In 1857, when the Michigan legislature compiled and arranged its statutes, the artisan's lien statute was not changed. It was identical to the 1846 version regarding both lien creation and lien enforcement. MICH.

COMP.LAWS, Vol. II, ch. 154, §§ 36–41 (1857). In 1871, the artisan's lien statute was again recodified without any changes. MICH.COMP. LAWS, Vol. II, ch. 215, §§ 36–41 (1871). By 1890, there were still no changes to the statute. MICH.COMP.LAWS, tit. XXXII, HOW. §§ 8401–8405 (Callaghan & Co. 1890). The statutory language remained intact through the recodifications of 1897 and 1915. MICH. COMP.LAWS, Vol. III, §§ 10747–10752 (1897); MICH.COMP.LAWS, Vol. III, ch. 244, §§ 14832–14837 (1915).

In 1929, the legislature modified the artisan's lien statute. The lien creation language provision remained identical to the first codification in 1846. MICH.COMP.LAWS § 13187 (1929). However, the lien enforcement mechanism was consolidated into a single statutory section. *Id.* § 13188. A lawsuit to enforce an artisan's lien was no longer required. Rather, a repairer who retained possession of the property was: (1) permitted to continue in possession until the reasonable charges were paid; (2) after nine months, permitted to sell the property in the same manner as an execution sale, provided that notice was given to the owner 30 days prior to the sale pursuant to a requisite statutory notice form; (3) authorized the sale of the property to the highest bidder, whether a third person or the artisan lienholder; (4) allowed to apply the proceeds of the sale to pay the lien amount, including any costs and expenses; and (5) required to pay any surplus to the clerk of the applicable local government entity, for the benefit of the owner, with notice given to the owner by registered mail. *Id.*

In 1948 and 1970, when the Michigan statutes were again recodified, there were no changes made to the artisan's lien statute. MICH.COMP.LAWS §§ 570.186, 570.187 (1948); MICH.COMP.LAWS ANN. §§ 570.186, 570.187 (1970)[15]. Since the 1970 compilation, there have been no changes to the artisan's lien

---

**14.** In this dispute, Heritage voluntarily and unconditionally released possession of the tractor to the Debtor. The court need not consider an instance when possession was *conditionally* relinquished by the artisan. *Compare M & I Western State Bank v. Wilson,* 172 Wis.2d 357, 493 N.W.2d 387 (App.1992) (holding continuous possession is not required under Wisconsin law

when a repairer conditionally releases personal property to the owner to earn money to pay the repair bill).

**15.** In the 1970 *annotated* version, the only clarification was the recognition of the archaic spelling of "artizan" which was designated by "[sic]".

statute in Michigan. Thus, a historical review of all of Michigan's artisan's lien statutes shows that while the enforcement mechanisms have changed, there have been *no changes* to the initial lien creation provision from the language originally promulgated in 1846.

In the 1846 statute, and for that matter all other subsequent statutes, there is no statement of legislative intent. In the absence of any legislative history, the court must look to general principles of statutory interpretation to determine the intent of the legislature and the meaning of the statute. In Michigan, statutes must be read in conjunction with common law. The Michigan courts have consistently recognized the importance of common law in statutory interpretations. According to the Michigan Supreme Court:

> In enacting statutes, the Legislature recognizes that courts will apply common-law rules to resolve matters that are not specifically addressed in the statutory provision. "[W]ords and phrases that have acquired a unique meaning at common law are interpreted as having the same meaning when used in statutes dealing with the same subject" matter as that with which they were associated at the common law.

*People v. Reeves*, 448 Mich. 1, 8, 528 N.W.2d 160, 164 (1995) (citations omitted).

This view of statutory interpretation is echoed by the Michigan Court of Appeals:

> We recognize our obligation to read the language of the arbitration statute in light of previously established rules of common law. We acknowledge that well-settled common-law principles are not to be abolished by implication; an ambiguous statute that contravenes common law must be interpreted so as to make the least change in the common law.

*Dick v. Dick*, 210 Mich.App. 576, 585, 534 N.W.2d 185, 190 (1995) (citations omitted).

> Legislative amendment of common law is not lightly presumed nor will statutes be extended by implication to abrogate established rules of common law.

*Hasty v. Broughton*, 133 Mich.App. 107, 113, 348 N.W.2d 299, 302 (1984).

Because there is no intention shown by the Michigan legislature to change prior common law, this court believes the statutes pertaining to creation of artisan's liens in the acts of 1846, 1857, 1871, 1890, 1897, 1915, 1929, 1948 and 1970 all constitute nothing more than a codification of prior common law. What does prior common law, and therefore the current statute, require regarding possession? The Michigan Supreme Court supplies the answer. First after stating the burden of proving an artisan's lien is upon the one asserting it, the court said:

> [The artisan's lien claimant] cannot successfully claim a common-law lien after the property was unconditionally surrendered.... If a common-law lien exists in this State it is lost upon an unconditional surrender of the property.
>
> . . . .
>
> If the [lien claimant] ever had a common-law lien, it was lost upon surrender of the property.

*Joy Oil Co. v. Fruehauf Trailer Co.*, 319 Mich. 277, 283, 29 N.W.2d 691, 693 (1947).

In *Nickell v. Lambrecht*, 29 Mich.App. 191, 185 N.W.2d 155, 8 U.C.C.Rep.Serv. 1381 (1970), the Michigan Court of Appeals stated that both the common law artisan's lien and the statutory artisan's lien continue to coexist. This court agrees that these two lien creation provisions are coterminous—it does not matter whether the lien claimant's theory is under common law or pursuant to statute. *See also Fidelity & Deposit Co. v. Johnson*, 275 F. 112, 114 (E.D.Mich.1921) (the artisan's lien claimant "having voluntarily parted with his possession of the property, which he had been holding under claim of possessory liens thereon, thereby waived and lost such lien"); Arthur P. Boynton, Comment, *Extent to Which Common–Law Artisan's Lien Has Been Supplanted By Statute*, 37 MICH.LAW REV. 273, 274 n. 9 (1938) (the scope of the Michigan artisan's lien statute is coextensive with common law except that a more effective enforcement thereof has been provided by the statute (discussing the 1929 Michigan statute)).

An interpretation of the artisan's lien statute which requires continuous possession is

also consistent with the general policy against "secret liens." *See generally, United States v. Speers,* 382 U.S. 266, 275, 86 S.Ct. 411, 416–17, 15 L.Ed.2d 314 (1965) (public policy militates against enforcement of unrecorded liens). *Cf. Ray v. Sec. Mutual Finance Corp. (In re Arnett),* 731 F.2d 358, 363 (6th Cir.1984) ("One of the principal purposes of the Bankruptcy Reform Act is to discourage the creation of 'secret liens'. . . ."). If the artisan's lien for the initial repair work was to remain in effect even after Heritage had relinquished possession of the tractor, then Heritage would in effect hold a "secret lien." In contrast, if Heritage had retained possession of the tractor, then subsequent creditors would have constructive notice that Heritage may be asserting a lien for work performed on the tractor. Thus, the continuous possession requirement provides a form of notice and thereby alleviates some of the concerns associated with unrecorded secret liens.

■ This court holds that, under Michigan law, once Heritage unconditionally and voluntarily released possession of the tractor to the Debtor, it lost its artisan's lien, both common law and statutory, regarding its first repair bill on the tractor. However, when Heritage again possessed the tractor to make the second repairs, a new and separate common law and statutory artisan's lien arose. Because Heritage did not relinquish possession of the tractor after completion of the second repairs, it holds a valid and enforceable artisan's lien for the amount of the reasonable charges for the second repair bill, in the amount of $1,659.41.[16] As of the chapter 13 filing date, Heritage held a valid arti-

san's lien, albeit in a lesser amount than asserted, on the Debtor's tractor.

**B.** *What is the Priority of Heritage's Artisan's Lien?*

■ The Uniform Commercial Code, as adopted in Michigan, answers the priority question as follows:

> When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise.

MICH.COMP.LAWS ANN. § 440.9310.

With regard to the second repair bill, Heritage holds a common law artisan's lien which is entitled to priority over the other secured creditors, i.e., Deere and Dart National Bank. Heritage also holds a statutory artisan's lien which is entitled to priority over the secured creditors inasmuch as the artisan's lien statute does not subordinate Heritage's lien.

**C.** *Should Heritage's Lien be Avoided and Damages Awarded to the Debtor?*

■ The Debtor seeks a determination that Heritage's lien is avoidable under § 545(1)(D) of the Bankruptcy Code.[17] The court rejects the Debtor's argument for two reasons. First, a chapter 13 debtor does not have standing to exercise the trustee's avoidance powers. *Mast v. Borgess Medical Center (In re Mast),* 79 B.R. 981, 982 (Bankr.

---

**16.** There is no dispute as to the reasonableness of Heritage's repair charges. To the extent required, because of the uncertainty of the amount of the second repair bill, this court may be requested to determine the amount of the second repair bill at a subsequent hearing. *See supra* note 10 and accompanying text.

**17.** Section 545 of the Code provides in part as follows:

> "The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—
> (1) first becomes effective against the debtor—
> (A) when a case under this title concerning the debtor is commenced;

> (B) when an insolvency proceeding other than under this title concerning the debtor is commenced;
> (C) when a custodian is appointed or authorized to take or takes possession;
> (D) when the debtor becomes insolvent;
> (E) when the debtor's financial condition fails to meet a specified standard; or
> (F) at the time of an execution against property of the debtor levied at the instance of an entity other than the holder of such statutory lien. . . ."

11 U.S.C. § 545(1).

W.D.Mich.1987). *Accord In re Redditt*, 146 B.R. 693, 700 (Bankr.S.D.Miss.1992); *In re Henderson*, 133 B.R. 813, 817 (Bankr. W.D.Tex.1991); *In re Tillery*, 124 B.R. 127 (Bankr.M.D.Fla.1991). *Contra In re Weaver*, 69 B.R. 554 (Bankr.W.D.Ky.1987); *In re Ottaviano*, 68 B.R. 238 (Bankr.D.Conn.1986). Second, a Michigan artisan's lien is not a statutory lien which falls within the parameters of § 545 of the Bankruptcy Code. ·Contrary to the Debtor's assertions, an artisan's lien does not first become effective when the Debtor becomes insolvent. Rather, the lien becomes effective upon completion of the work and it remains in effect so long as the artisan retains possession—regardless of the financial solvency of the owner who ordered the work.

The court also rejects the Debtor's contention that he should be awarded damages. At the time the chapter 13 case was filed, Heritage validly possessed the Debtor's tractor pursuant to both the common law and statutory artisan's liens. Heritage is not legally required to relinquish the possession of the tractor until such time that the reasonable repair charges were paid or adequate protection was given to it by the Debtor for a turnover of the tractor. *See generally United States v. Whiting Pools, Inc.*, 462 U.S. 198, 211, 103 S.Ct. 2309, 2317, 76 L.Ed.2d 515 (1983).

## VI.  CONCLUSION

Heritage holds a valid artisan's lien for its second repair job. Heritage's artisan's lien is superior to the security interests held by Deere Credit Services and Dart National Bank. Heritage's artisan's lien is not avoidable as a statutory lien under 11 U.S.C. § 545. The Debtor is not entitled to recover damages from Heritage.

An order shall be entered accordingly.